James R. YOCOM, Commissioner of Labor
and Custodian of the Special
Fund, Appellant,

v.

Poyster KEENE et al., Appellees.

Court of Appeals of Kentucky.

May 31, 1974.

Robert D. Hawkins, Chief Counsel for Special Fund, Dept. of Labor, Arthur R. Samuel, Counsel for Special Fund, Dept. of Labor, Frankfort, for appellant.

Charles E. Lowe, Lowe, Lowe & Stamper, Pikeville, for appellees.

VANCE, Commissioner.

This is an appeal by the Special Fund from the judgment of the Pike Circuit Court sustaining an award of the Workmen's Compensation Board for total and permanent disability resulting from the occupational disease of pneumoconiosis and/or silicosis.

The claimant-appellee, Poyster Keene, was employed for approximately twenty years as an underground coal miner. On or about May 1, 1972, he ceased work and soon thereafter filed a claim for workmen's compensation benefits. His work history as shown on his Form 11 indicated a period of unemployment from March 16, 1970, until April 28, 1971. However, during the hearing before the Workmen's Compensation Board, his uncontradicted testimony was that he was employed by Little Hackney Creek during that period.

On June 15, 1972, he returned to work until July 25, 1972, when he passed out in the mine. He returned to work August 18, 1972, and worked until September 22, 1972, this being the date of his last employment.

The appellee was examined by four physicians. Three of these physicians found evidence of pneumoconiosis and it was their opinion that the appellee was totally disabled from working in a dusty environment such as underground coal mining. The other physician did not find evidence of pneumoconiosis and it was his opinion that the appellee could return to his previous employment.

Based on this evidence, the Workmen's Compensation Board entered an opinion and award on May 21, 1973, granting the claimant maximum compensation and medical benefits as of September 22, 1972. The Pike Circuit Court affirmed this opinion and award and the Special Fund appeals.

■ The appellant contends the appellee did not meet the requirements for exposure to the hazards causing occupational disease as required by KRS 342.316(4) which states:

"In claims for compensation due to the occupational disease of silicosis or any other compensable pneumoconiosis it must be shown that the employe was exposed to the hazards of the disease in his employment within this state for at least two (2) years immediately next before his disability or death."

■ We have construed this statute as to not require exposure each and every day for two years until the moment the disease becomes disabling since this would be unreasonable. However, the interruption cannot be substantial. Inland Steel Company v. Terry, Ky., 464 S.W.2d 284 (1971); Young v. Jones, Ky., 481 S.W.2d 268 (1972). The appellee ceased to work on May 1, 1972, and filed his claim for compensation benefits claiming disability as of that time. Thereafter he unsuccessfully attempted to work on several occasions through September 22, 1972. We do not believe his persistent efforts to resume work after his alleged disability defeats his claim for benefits since the medical evidence indicates the presence of pneumoconiosis as early as April 25, 1972. The evidence was sufficient to establish the onset of his disability as May 1, 1972, and appellee was exposed to the hazards of pneumoconiosis for two years immediately preceding that date.

■ The appellant also contends that the evidence did not show total disability.

Even though the evidence supports the finding of the Board that appellee is suffering from pneumoconiosis it does not automatically follow that the occupational disability resulting therefrom is total.

In Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968), the considerations for determining the extent of occupational disability were established as follows:

"If the board finds that the workman is so physically impaired that he is not capable of performing any kind of work of regular employment, or if the board finds that regular employment in the kind of work the man can perform is not

available on the local labor market, the man will be considered to be *totally* disabled. Otherwise he will be considered to be only *partially* disabled. And the *percentage* of his partial disability will be determined by the ratio of the prevailing wage rates in the kind of employment available to him, to the wage rates earnable by him before being injured.

"It will be noticed that in the rule here outlined no significance is given to the workman's *usual occupation* other than that the *wages* earned by him in that occupation before injury are a factor in determining his pre-injury wage capacity for comparison with his post-injury wage capacity.

" ' * * * the normal rule is that disability is not tested by any particular occupation, and that, even in the case of a skilled craftsman, he will not be deemed totally disabled if unskilled or light work that he can perform is continuously available to him.' Larson's Workmen's Compensation, Vol. 2, sec. 57.53."

*Osborne* v. *Johnson, supra,* was extended in its application to occupational diseases in Young v. Marsillett, Ky., 473 S.W.2d 128 (1971).

We held in Princess Manufacturing Company v. Jarrell, Ky., 465 S.W.2d 45 (1971), that the burden of establishing the extent of disability caused by occupational disease rests upon the claimant. In some respects this seems harsh because much of the evidence as to the availability of other employment in the area is as readily available to the employer as to the claimant.

The testimony of claimant regarding his disability was as follows:

"65. Tell us how you felt?

"A. I passed out on the job the 25th of July, smothering so bad and got weak. I come home and went to a doctor, and he recommended me stay out, so I stayed out till the 18th Day of August and went back and tried it again and had to come out.

"66. You are just not able to work?

"A. Just not able

"67. If you were able, would you be working?

"A. If I was able, I would rather than fool with this any time. I just ain't able to work, and I got to have some way for my family.

"68. What education do you have?

"A. Got eighth grade.

"69. Are you skilled in any other occupation, other than coal mining?

"A. No, I ain't.

"70. Have you had any vocational training for any other job or type of work?

"A. Don't have nothing.

"71. Do you know any kind of work that you could do?

"A. No."

Appellant's testimony that he is not able to work and does not know of any kind of work he could do leaves much to be desired because it does not show any application for or refusal of other employment or that he has made any investigation whatever as to the availability of other work.

On the other hand it would appear as easy for the employer to demonstrate the availability of other regular employment as it is for the claimant to show the lack of it. Considering the appellant's testimony in the light of the fact that his education, work experience and physical condition limit his job opportunities, and in the absence of any countervailing evidence as to the availability of regular work in the area which he could perform, the court is of the opinion that the evidence in the record is sufficient to sustain the findings of the Board.

The judgment is affirmed.

All concur.