Drexel **DAVIS**, Treasurer, Commonwealth of Kentucky, as Custodian of the Uninsured Employers' Fund, Appellant,

v.

Shirley **TURNER** et al., Appellees.

Court of Appeals of Kentucky.

Feb. 21, 1975.

Ed W. Hancock, Atty. Gen., Thomas A. Ainley, Asst. Atty. Gen., Frankfort, for appellant.

Harold D. Ricketts, Bowling Green, for appellee Shirley Turner.

Leland Logan, Bowling Green, for appellee Joe Marshall.

Thomas L. Ferreri, Louisville, for appellee James R. Yocom, Commissioner of Labor and Custodian of the Special Fund.

CULLEN, Commissioner.

The workmen's compensation law of Kentucky was amended in many major respects by Chapter 78 of the Acts of 1972. By section 19 of that Act, compiled as KRS 342.760, an Uninsured Employers' Fund was created. Under subsection (4) of that section, compensation is to be paid from that fund (with rights of subrogation against the employer) "when there has been default in the payment of compensation due to the failure of an employer to secure payment of compensation as provided by this chapter."

The appellee Shirley Turner was injured in May 1973 while in the course of his work as an employe of the appellee Joe Marshall. The latter had taken no steps toward identification of himself as an employer operating under the workmen's compensation law, and had not complied with the requirement of KRS 342.340(1) (which was not amended by the 1972 Act) that "Every employer under this chapter" shall provide insurance or security against his liability for workmen's compensation.

Turner instituted a proceeding for workmen's compensation against Marshall and the Uninsured Employers' Fund. The result of that proceeding was an order of the Workmen's Compensation Board awarding Turner compensation for total permanent disability, against the Uninsured Employers' Fund, with the latter being given subrogation rights against Marshall. The Fund appealed to the War-ren Circuit Court, which entered judgment affirming the order of the board. The Fund now is appealing to this court from that judgment.

The primary contention of the Fund on this appeal is that the 1972 amendments to the workmen's compensation law did not eliminate the long-standing *optional* character of the law, by virtue of which an employ*er* was not subject to the law unless he *elected* to come under it. The Fund argues that since Marshall had not elected to come under the law he was not required to comply with it and therefore there was no "failure" on his part "to secure payment of compensation as provided by this chapter," within the meaning of KRS 342.-760. The Fund maintains that the words just quoted refer only to the failure of employer, who has elected to come under the Act, to provide insurance or security as required by KRS 342.340(1).

The Fund undertakes to find support for its argument in the fact that KRS 342.390, 342.395 and 342.340(2) were not amended by the 1972 Act. KRS 342.390 provides a form by which an employer's election to operate under the workmen's compensation law shall be effected. KRS 342.395 deals with acceptance of the law by the employ*e* (which is presumed in the absence of express rejection) and the section continues to commence with the words: "In the event an employer elects to operate under this chapter". KRS 342.340(2) requires an employer "accepting this chapter" to file with the Workmen's Compensation Board evidence of insurance or security, and makes provision for optional common law liability "as if the employer had refused to accept this chapter."

In view of the provisions of the 1972 Act hereinafter to be discussed, we do not attach to the three sections just above mentioned the meaning and significance ascribed to them by the Fund. KRS 342.-660 (section 6 of the 1972 Act) authorizes an *election* to come under the law by an employer of exempt employes, so KRS

342.390 (prescribing the form for employers' elections) may be considered to have been retained in the law for such employers only. The 1972 Act continues to provide optional coverage for employ*es*, so the basic provisions of KRS 342.395, as to the employe's election, remained necessary. The fact that the introductory words of that section, referring to the employ*er*'s election, were not deleted, indicates no more, we think, than the reluctance of the drafters of the 1972 Act to amend the entire section just to eliminate a few words that were becoming surplusage. The same indication appears with respect to the failure of the drafters to eliminate from KRS 342.340(2) the words with reference to the employer's election. Actually, a substantial part of KRS 342.340(2), dealing with the consequences of the failure of an employer to provide insurance or security, obviously were intended to be superseded by KRS 342.690(2) (section 9 of the 1972 Act).

■ From an examination of the 1972 Act in its entirety, giving full consideration to the new provisions it created and the former provisions it repealed, the conclusion is inescapable that the 1972 Act intends employers (except of exempt employes) to be subject to the workmen's compensation law with no option of election not to come under the law. Among the former provisions repealed by the 1972 Act were KRS 342.015, which conditioned the application of the entire workmen's compensation law upon *election* by both employer and employe, and KRS 342.405, which made provision for election by an employer to withdraw from coverage. Also repealed was KRS 342.410, which denied certain common law defenses to an employer who elected not to come under the workmen's compensation law. Most important, however, is the plain, unambiguous provision of new KRS 342.630 (section 3 of the 1972 Act) that:

"The following shall constitute employers mandatorily subject to, and required to comply with, the provisions of this chapter:

"(1) Any person, other than one engaged solely in agriculture, that has in this state one or more employes subject to this chapter.

\* \* \*"

■ The Fund suggests that KRS 342.-630 is mandatory only in the sense of subjecting a *nonelecting* employer to a *criminal* penalty under KRS 342.990(2). Such a construction not only is not warranted by the plain words of the particular section, but is contrary to the overall purpose evidenced by the 1972 Act as a whole.

While the words "secure payment of compensation as provided by this chapter", appearing in KRS 342.760 and 342.690, obviously refer to the providing of insurance or security as required by KRS 342.340, the obligation to so provide is not conditioned on any *election* by an employer but is automatically imposed on all employers mandatorily made subject to the Act by KRS 342.630. Accordingly, if a subject employer simply ignores the Act in every respect, he has failed to secure the payment of compensation the same as an employer who has publicly proclaimed his intent to be under the Act but has not provided insurance or security.

■ It is our conclusion that the Workmen's Compensation Board and the circuit court correctly held that the Uninsured Employers' Fund could be held liable for compensation to the workman of an employer who simply had ignored the existence of the workmen's compensation law. However, we do not concur in the view of the board and the circuit court that the employer has no direct liability to the workman for compensation in such instance, and is liable only to the Fund under its subrogation rights. Subsection (2) of KRS 342.690 provides:

"If an employer fails to secure payment of compensation as required by this chapter, an injured employe \* \* \* may claim compensation under this chapter and in addition may maintain an ac-

tion at law * * * for damages on account of such injury * * * "

We think the reference to a "claim [for] compensation under this chapter" means that the employe may claim compensation *from the employer* and is not relegated to proceeding solely against the Fund. This view is supported by the language of KRS 342.760(4) that imposes liability on the Fund "when there has been a default in the payment of compensation due to the failure of an employer to secure payment of compensation as provided by this chapter." This clearly means that the Fund's liability does not arise merely from the failure of the employer to provide insurance or security, but from *a default in the payment of compensation due thereto.*

The misinterpretation by the board and the circuit court, above mentioned, does not, however, require that the judgment be reversed, since it relates primarily to the rights of the employe, who has not appealed.

The appellant Fund does not argue that the 1972 Act, if construed to be compulsory as to employers, is unconstitutional. However, we deem it appropriate to note that Kentucky's original nonelective compensation Act was held unconstitutional in State Journal Co. v. Workmen's Compensation Board, 161 Ky. 562, 170 S.W. 437, 1116, not because it was compulsory as to employ*ers*, but because it was compulsory as to employ*es*.

■■ The Fund, as relates to the merits of the particular award in the instant case, argues that there was insufficient proof of causation and that the evidence does not support the board's finding of total permanent disability. We find no merit in these arguments. The employe's testimony was that he was struck a heavy blow in the chest by a 2″ x 8″ plank that fell on him from a distance of some six feet above him. He was found upon medical examination to have a fractured sternum. In those circumstances medical testimony was not required to establish that the fracture was *caused* by the blow from the falling

plank. The employe's family physician testified that the employe was totally and permanently disabled from the performance of any work for which he was qualified. The Fund simply argues that the board should have accepted the opinion of the independent physician appointed by it, which was that there was only a partial disability. The board was not required to do that.

The judgment is affirmed.

All concur.