Drexell DAVIS, Treasurer of the Commonwealth of Kentucky, etc., Appellant,

v.

Thomas BAKER et al., Appellees.

Court of Appeals of Kentucky.

Oct. 31, 1975.

Ed W. Hancock, Atty. Gen., Thomas A. Ainley, Lloyd R. Edens, Asst. Attys. Gen., Frankfort, for appellant.

William M. Melton, Hazard, Joe A. Newberg, Special Fund, Frankfort, Maxwell P. Barret, Hazard, for appellees.

PALMORE, Justice.

The Uninsured Employers' Fund (KRS 342.760) appeals from a judgment reversing an order of the Workmen's Compensation Board which had denied a claim asserted by the appellee Thomas Baker against his last employer, the appellee Jerry Lynn Coal Corporation.

The appellant's argument is that the evidence before the Board was not sufficient to compel a finding in the claimant's favor and that the reviewing court erred in adjudging that it was. The claimant's position is, of course, to the contrary. He contends also that the appeal should be dismissed for the reason that unless and until liability is adjudged against the Fund it is not a party in interest and has no standing to appeal.

Baker's claim was filed with the Board on February 16, 1973. It alleged that he had become totally disabled on January 12, 1973, from the "occupational disease of pneumoconiosis and silicosis and black lung." Attached to the claim were medical reports by two physicians who had examined the claimant. One, by Dr. William H. Anderson, of Louisville, Kentucky, concluded with a final diagnosis of "Category 1 pneumoconiosis and paroxysmal nocturnal dyspnea compatible with arteriosclerotic heart disease." The other, by Dr. Richard P. O'Neill, of Lexington, Kentucky, diagnosed the claimant's condition as "1. Chronic bronchitis. 2. Coal worker's pneumoconiosis, simple, stage 1/1 (p and q)."

In his deposition Dr. Anderson testified as follows:

"It has always been my policy and continues to be so to permit a man with Category 1 pneumoconiosis to continue working when he has a job under the conditions that he will accept repeat checks Xrays at least at yearly intervals with the understanding that if he progresses to a Category II he would then remove himself from any further dust exposure."

It was Dr. Anderson's opinion that except for the arteriosclerotic condition (which was not attributed to the employment) Baker could perform hard manual labor the same as any other man of his age. Dr. O'Neill, on the other hand, testified that in his opinion, "by virtue of the fact that Mr. Baker has coal worker's pneumoconiosis, he is medically, totally and permanently disabled from his usual and customary occupation of coal mining and he should be cautioned not to work in any form of noxious, dusty environment."

At the time he was examined by Drs. Anderson and O'Neill the claimant was 45 or 46 years of age and had worked for a total of four different coal mining companies over a period of more than 30 years. He said that he had no education and could not read or write except to sign his name. He had worked for his last employer as a repairman on machines and described himself as a mechanic. In Dr. O'Neill's opinion, "this man would be a very poor competer" in the labor market "because of his industrial lung disease, because of his age and because he lives in Eastern Kentucky."

No evidence was taken in behalf of the defendant employer or the Special Fund.[1]

---

1. The Special Fund was a party defendant pursuant to KRS 342.120(1)(a).

On November 12, 1973, after the case had been submitted and briefed, the Board entered an order holding it in abeyance pending this court's decision in another proceeding involving a construction of the 1972 legislative amendments to the occupational disease features of the Workmen's Compensation Act.[2]

On April 29, 1974, the claimant moved that the Uninsured Employers' Fund be made a party defendant, alleging that his employer, Jerry Lynn Coal Company, apparently was not operating under the Workmen's Compensation Act at the time he became disabled. A statement in the record executed by the director of the Board indicates that on January 12, 1973, the employer had not accepted the provisions of the Act and did not have coverage. Over strenuous objection by the Uninsured Employers' Fund the motion was granted, and it was made a party defendant. Its subsequent motions for dismissal on grounds that the Board had no jurisdiction [3] and that in any event it had been irreparably prejudiced by the delay in making it a party were denied.

In its final order the Board dismissed the claim on its merits and did not rule on the jurisdictional question raised by the Uninsured Employers' Fund. The critical factual findings were as follows:

"Dr. William H. Anderson testified that plaintiff could continue working in the mines . . . and could perform hard manual labor, but for his heart disease . . . .. The only other medical evidence was the testimony of Dr. O'Neill who testified that plaintiff should not work in the mines or a dusty environment . . . but never testified that plaintiff could not perform manual labor which did not involve coal mining. It is to be observed that plaintiff has the training of a mechanic and

considering his age, the Board is of the opinion that he is not disabled."

On the claimant's petition for review (KRS 342.285) the circuit court accepted his contention that "the only requirement in an occupational disease case is that the claimant has contacted [sic] the disease and is suffering from it at the time he ceased work and that he would be barred from seeking employment in his regular employment as a coal miner. All these requirements have been met by the claimant and the Board erred in dismissing the claim on the basis of the claimant not being so disabled." The order of the Board was thereupon set aside with directions that a new opinion and order be entered in conformity with that conclusion.

The threshold question to be decided is whether the Uninsured Employers' Fund has standing to prosecute an appeal to this court. According to Baker's motion to dismiss, which has been passed to the merits, "Since there was no judgment of liability awarded, either by the Board or the Lower Court, to affect the right of the Uninsured Employers Fund, appellant herein, then this appeal should be dismissed. . . ."

■■ If this were a common-law action and the judgment of the circuit court were equated with an order granting a new trial, it would be interlocutory and not subject to appeal, since there has not been a final adjudication of liability or non-liability. In workmen's compensation proceedings, however, it has been consistently held that a judgment setting aside an order of the Board and remanding the case for a different disposition on the merits is appealable. *Jewell Ridge Coal Company v. McDowell*, Ky., 392 S.W.2d 59, 60 (1965); *Pittsburg & Midway Coal Mining Co. v. Rushing*, Ky., 456 S.W.2d 816, 818–819 (1969). Obviously the Uninsured Employers' Fund was a beneficiary of the Board's order dismissing the

2. *Maggard v. International Harvester Company*, Ky., 508 S.W.2d 777 (1974).

3. The argument that an employer who has not elected to come under the Workmen's Compensation Act is not required to comply

with it, and therefore cannot be in default under KRS 342.760(4), was decided to the contrary in *Davis v. Turner*, Ky., 519 S.W.2d 820 (1975).

claim, because it was thereby absolved of any possible liability. The judgment of the circuit court re-exposed it. With respect to its standing as a party in interest, we are inclined to think that the claimant conferred that status upon it by making it a defendant and asserting a right of recovery against it. Undoubtedly it has a "real and direct interest" in the controversy. Cf. *Miller v. Miller*, Ky., 335 S.W.2d 884, 886 (1960).

This court has never held, as the claimant contends, that "the only thing that has ever been required in so far as an occupational disease of pneumoconiosis and, or silicosis is concerned is to show that the claimant has contracted the disease and is suffering from it at the time he ceased work and that he would be debarred from seeking employment in his regular occupation as a coal miner."

■ *Good v. Russell Fork Coal Company*, Ky., 387 S.W.2d 842, 843 (1965); *Harlan Collieries Company v. Smith*, Ky., 396 S.W.2d 67, 68 (1965), and *Daugherty v. Watts*, Ky., 419 S.W.2d 137, 138 (1967), are all cases in which *findings of the Board* were upheld. We have held, in substance, that the existence of the disease[4] alone is sufficient to support a finding that the claimant is totally disabled for his regular occupation as a miner exposed to harmful dust. We have not said that as a matter of law the existence of the disease requires such a finding.

In this case the medical witnesses agree that the claimant has pneumoconiosis in its earliest discernible stage. They differ, however, as to whether it prevents him from continuing to work, for the time being at least, as a coal miner. It may be that the mere presence of the disease makes him unemployable in the mining industry in eastern Kentucky. Frankly, we do not know. Certainly we cannot declare it so as a matter of judicial notice. If it is a fact it

must be proved, and must be proved conclusively if we are to hold that the Board cannot find otherwise.

■ We fully appreciate the importance of this particular question, and that is the reason for a formal opinion in the case. What we hold here is that whether the existence of pneumoconiosis actually renders a person unemployable as a coal miner is a question of fact to be decided by the Board (or by the General Assembly) rather than by a court. If the existence of the disease alone prevents employment as a miner, then the extent to which the claimant's over-all earning capacity has been impaired should be determined under the principles stated in *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968).[5]

In this particular instance the Board's finding of no disability appears to have been grounded on the premise that because the claimant is a mechanic his ability to earn a living other than in the mines has not been impaired. If, however, he can no longer do the work at which he is most experienced, and which probably represents his maximum earning capacity, then it is virtually certain that such capacity has been reduced. Regrettably, the trouble here is that except for Dr. O'Neill's general observation that he "would be a very poor competer," neither side produced any evidence whatever to demonstrate the availability or nonavailability of some other type of employment. See *Princess Manufacturing Company v. Jarrell*, Ky., 465 S.W.2d 45, 48–49 (1971); *Young v. Marsillet*, Ky., 473 S.W.2d 128, 130–131 (1971); *Yocom v. Keene*, Ky., 512 S.W.2d 27, 28–29 (1974), and *Wagoner v. Smith*, 530 S.W.2d 368 (decided today); all of which discuss the question of what must be proved, and by whom, with respect to partial disability when the claimant is totally disabled from his usual occupation.

---

4. In those three instances, silicosis.

5. We need not consider in this case whether, or the extent to which, the principles set

forth in *Osborne v. Johnson* have been modified by Ch. 78, Acts of 1972.

Thus we are forced to the conclusion that (1) the evidence was not such as to compel the Board to find total disability and (2) there was no evidence on which the Board could have determined the extent of partial disability. Hence the trial court erred in setting its order aside.

Neither the employer nor the Special Fund having appealed from the judgment, as to them it must stand and the Board must abide by it. The judgment should be modified only to the extent of affirming the final order of the Board dismissing the claim as to the Uninsured Employers' Fund.

The judgment is reversed with directions that a new judgment be entered in conformity with this opinion.

All concur.