**PRINCESS MANUFACTURING COMPANY & Travelers Insurance Company, Appellants,**

v.

**Lou Ethel JARRELL et al., Appellees.**

Court of Appeals of Kentucky.

March 19, 1971.

Harris S. Howard, Howard, Francis & Howard, Prestonsburg, for appellants.

Burnis Martin, Paul E. Hayes, Prestonsburg, for appellees.

VANCE, Commissioner.

The appellee, Lou Ethel Jarrell (hereinafter referred to as the employee) developed a breaking-out or rash, referred to in the medical testimony as urticarial hives, as a result of an allergic reaction to certain fabrics used in the manufacture of garments by Princess Manufacturing Company (hereinafter referred to as employer).

The employee was found by the board to be totally disabled. Although disability was not considered permanent, the board found no evidence of complete recovery nor evidence that other work opportunity was available to the employee and entered an open-end award.

The circuit court upheld the award and the employer on this appeal contends that the award was erroneous because (1) an allergic reaction is not an occupational disease within the meaning of KRS 342.316 and (2) the board's finding of total disability was not supported by any evidence of probative value.

The transcript of evidence in this case does not reveal an extensive inquiry as to whether allergic reactions properly may be regarded as diseases. It is noted, however, that Doctor Maurice Kaufmann, an allergy specialist, testified as follows:

"* * * Allergy can be defined as a disease of hypersensitivity and about fifteen-percent of the population have a tendency to develop allergies, what we call major allergies, which takes the form of hives, eczema, hay fever or asthma. * * *."

In at least five other places in his deposition Doctor Kaufmann refers to claimant's allergic reaction as a disease. There was no evidence that the reaction is not a disease. On this record, therefore, we think the board correctly viewed the employee's allergic reaction as a disease.

Whether the allergic reaction is an occupational disease within the meaning of KRS 342.316 is a question which this court has not squarely faced. Wiard v. Ken-Wel, Inc., Ky., 419 S.W.2d 765 (1967) and McDonald v. Goodwin Brothers, Inc., Ky., 379 S.W.2d 54 (1964) were allergic reaction cases but in each the claim for compensation was denied on the basis that the employee was not disabled to do other work. Pittsburg and Midway Coal Company v. Barnard, Ky., 447 S.W.2d 618 (1969)

upheld a denial of compensation upon the ground that the allergic reaction was not shown to be work-connected. Ashland Crafts, Inc. v. Young, Ky., 451 S.W.2d 607 (1970) upheld an award for byssinosis, an alleged allergic reaction, but the question of whether an allergic reaction was properly classified as an occupational disease under KRS 342.316 was not actually raised in the case or decided by the opinion.

The earliest workmen's compensation benefits were limited to injuries which arose out of and in the course of employment by accidents. Occupational diseases were noncompensable. The Kentucky Workmen's Compensation Law enacted by the General Assembly of Kentucky in 1916 provided:

"* * * It shall affect the liability of the employers subject thereto to their employes for personal injuries sustained by the employe by accident arising out of and in the course of his employment or for death resulting from such accidental injury; provided, however, that personal injury by accident as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall they include the results of a pre-existing disease * * *." Acts of the General Assembly, 1916, Chapter 33, page 354.

The risk of development of certain diseases is significantly higher for workers engaged in some occupations than for workers generally and these diseases are so commonly associated with the occupations as to be called *occupational diseases*. All employees engaged in such an occupation are exposed to the risk of these diseases simply by reason of their employment. Silicosis is an example of this type of occupational disease. Although the existence of such occupational diseases has long been public knowledge, these diseases were excluded from compensation benefits under the earliest compensation acts.[1] Gradually,

1. Larson says this exclusion was due in part to the viewpoint that Workmen's

Compensation Statutes as applied to injuries substituted a nonfault liability upon

however, there developed in the country a limited coverage of occupational diseases by enactment of statutes providing coverage for certain named diseases. Kentucky first introduced such coverage in 1944 by an act which provided coverage for silicosis. Kentucky Acts, 1944, Chapter 82. Later Kentucky Statutes provided coverage for preexisting dormant nondisabling diseases aroused into disabling reality. KRS 342.120. And in 1962 the General Assembly enacted a statute providing general compensation benefits for occupational diseases. KRS 342.316. This statute provides:

"(1) 'Occupational disease' as used in this chapter means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is equally exposed outside of the employment shall not be compensable, except where such diseases follow as an incident of an occupational disease as defined in this section.

"(a) A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident to the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease shall be incidental to the character of the business and not independent of the relationship of employer and employe. The disease need not have been foreseen or

expected but, after its contraction, it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence. * * *."

Allergic reactions are caused by an inherent weakness or inability in certain people to tolerate exposure to substances known as allergens. Often this inherent weakness remains hidden for years but a sufficiently prolonged or unusual exposure will cause a sensitization to a particular allergen and an allergic reaction will develop. This allergic reaction will not develop, however, in other individuals equally exposed to the same substance unless they too are affected with the inherent inability to withstand such exposure.

The employee in this case had an inherent inability to withstand exposure to unlaundered fabrics used in the employer's plant. As a result she suffered an allergic reaction and broke out in a rash whereas the other employees did not experience such a reaction. Medical tests were made which showed that she was highly sensitive to the fabrics used in the plant.

Her allergic reaction is work-connected in the sense that it was caused by a condition which she encountered in her work and this condition was encountered at work in a far greater degree than it would have been encountered in other employment generally or outside the employment. Nevertheless, the incidence of such allergic reactions among garment workers generally was not shown to be unusual and in no sense was this a disease commonly associated with the occupation.

In determining whether allergic reactions are occupational diseases within the meaning of KRS 342.316, the question is whether to apply a subjective test to de-

employers in cases where they may have been subject to tort liability and they were not subject to tort liability for diseases developed by employees and secondly because of a fear that heavy incidence of certain diseases in certain occupations

or areas would make their full coverage an impossible burden on the compensation system. Larson's Workmen's Compensation Law, Volume 1A, Occupational Disease, Section 41.20.

termine how the conditions of employment affect a particular employee or to objectively limit inquiry as to how the conditions of employment affect employees generally. KRS 342.316 does not reveal any clear legislative intent in this regard.

Without question, the early concept of occuational disease was objective in that it encompassed only those diseases which employees generally were more likely to develop because of some unusual hazard in a particular occupation.

The intent of the present legislation to exclude from compensation ordinary diseases of life to which the general public is equally exposed is obvious.[2] The legislative intent as to whether an objective or a subjective test should be employed in applying the present legislation is not obvious or even discernible.

The phrase, *the disease need not have been foreseen or expected*, can be interpreted to express a legislative intention that occupational disease is not limited to those diseases in which the risk of contagion is shared equally by all employees and can therefore to some extent be expected or anticipated. Such phrases as *a direct causal connection between the conditions under which the work is performed and the occupational disease* and *followed as a natural incident to the work as a result of the exposure occasioned by the nature of the employment* are susceptible to either a subjective or objective interpretation. It could mean that a direct causal connection requires a showing that something about the occupation would tend to cause the disease in all workers or it could be said that the requirement is satisfied by a showing of a direct causal relationship between the work conditions and a particular disease contracted by a single individual.

■ The legislature may provide coverage of occupational diseases under the Workmen's Compensation Statutes as broadly or as narrowly as it sees fit. It is not the prerogative of the court to attempt to establish policy or determine the wisdom of the legislation. When we encounter a situation where the legislative intent is not discernible from the language of the act, we may look beyond the language of the act to legislative history and purpose of the legislation and other pertinent factors to determine legislative intent. May v. Clay-Gentry-Graves Tobacco Warehouse Co., 284 Ky. 502, 145 S.W.2d 84 (1940).

We are persuaded that the legislative history of the workmen's compensation law in Kentucky evinces a gradual broadening rather than a restriction of the coverage afforded by the act. We are also mindful of the command of the statute to liberally construe its provisions. KRS 342.004.

A liberal construction of KRS 342.316 requires an extension of its benefits to employees in situations where inclusion in the coverage is as compatible with the statute as is exclusion from coverage. We are fortified in this position by the fact that a majority of the states have come to a similar conclusion.[3]

■ We uphold the finding of the board and the judgment of the circuit court that the employee is suffering from an occupational disease within the meaning of KRS 342.316.

A serious question is presented as to the extent and permanency of the employee's disability. As noted hereinabove, compensation has been denied in Kentucky in allergy reaction cases on the ground that the employee, though disabled because of a particular allergy, was nevertheless able to perform other work available to him.

2. This limitation was removed by a 1970 amendment to the act.

3. The majority of jurisdictions have held that individual allergy or sickness is immaterial as the particular conditions of employment cause the disability. Larson's Workmen's Compensation Law, Volume 1A, Occupational Disease, Section 41.62.

Wiard v. Ken-Wel, Inc., and McDonald v. Goodwin Brothers, Inc., supra.

Although Mrs. Jarrell may be incapacitated to work in occupations where she is exposed to fabrics, it does not inevitably follow that she is disabled to engage in work in which such exposure is not encountered.[4]

There is an obvious difference in the extent of disability which is likely to result from an injury by accident as contrasted with disability likely to result from an occupational disease such as allergic reaction.

An injury to a limb, back or other part of the body which results in a limitation or restriction of normal physical capacity is more likely to have a general disabling effect from an occupational standpoint than an allergic reaction, the result of which may disable an employee to engage in some specific work in which he would encounter a particular allergen, but would nevertheless leave the employee well and able-bodied to engage in most other occupations.

The burden of proof is upon the claimant. Lee v. International Harvester Company, Ky., 373 S.W.2d 418 (1963).

■ Where total disability is claimed as a result of an allergic reaction, we think the burden rests with the claimant to show that the allergic reaction has resulted in a total disability to perform work in her occupational classification and that her capacity to engage in other types of work generally has been impaired.[5]

Since the employment opportunities of a claimant disabled by a particular allergic reaction may not be limited, except as to one particular job, we feel that such a claimant has a greater burden to affirmatively establish a resulting impairment of capacity to engage in other work generally than one claiming disability from injury.

■ The board premised its award upon a recitation that there was no evidence of available work which claimant could do and no evidence that claimant could secure or retain employment. The burden was thereby placed upon the employer to show that claimant's capacity to engage in other work was not impaired. We think that an award cannot be sustained upon such a basis in allergic reaction cases.

This case must be remanded to the board for its determination of whether the evidence, rather than the lack of evidence, considered in its entirety established the disability of the claimant according to the standards set forth herein. In view of the unusual characteristics of occupational disability from allergic reaction, the board in its discretion may permit or direct the taking of additional evidence on the issue of disability.

The judgment is reversed with directions that a new judgment be entered setting aside the award and remanding the case to the board for further proceedings consistent with this opinion.

All concur.

---

4. There was no finding that employee's job classification was limited by reason of special skills or training to that of a seamstress or garment worker.

5. This case was initiated before the effective date of Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968).