Hance MARCUM, Appellant,

v.

GENERAL ELECTRIC COMPANY et al., Appellees.

Court of Appeals of Kentucky.

March 31, 1972.

John D. McCann, Brown, Sledd & McCann, Lexington, for appellant.

J. Peter Cassidy, Jr., Moloney & Moloney, Lexington, J. Keller Whitaker, Director, Workmen's Compensation Board, Frankfort, for appellees.

STEINFELD, Chief Justice.

The Workmen's Compensation Board awarded appellant Marcum benefits—per-

manent partial disability for the loss of the sight of one eye. On appeal the circuit court reversed the board and directed it to dismiss the claim. We affirm.

Marcum's claim is based on a work-connected accident which occurred on August 21, 1968. He testified "I was traveling under a conveyor that carries raw glass; scrap glass. It was hot glass * * * it is popping and snapping all the time breaking into small pieces. * * * and a piece hit me in the eye." He reported the incident, received first aid and continued working. On the way home, because " * * * it started to hurt more, (he) stopped off and seen Doctor Wells * * * and he sent (him) to the hospital to have x-rays made on it and (he) had to come back to him that night." He testified that he saw Dr. Wells three or four times, but that he didn't realize how severe the injury was until July 1969.

In November 1967, when Marcum sought employment with appellee, he had an eye examination. He testified that " * * * I had twenty-twenty vision when I went to work there." Marcum was asked if he had ever sustained any other injury to his eye, to which he replied that he had not. He was also asked, and answered, as follows:

"Q3 When this glass hit your eye did you hit anything else with your eye?

A  Not that I know of.

Q4 You didn't jerk over and hit a piece of metal or anything?

A  No."

The only other witness to testify was Dr. Francis B. Wells. Because the argument as to Marcum's right of recovery rages over the physician's testimony, we consider it necessary to quote from it at length, as follows:

"Q15 How did you proceed in your early examination and treatment of Mr. Marcum?

A  I examined his eye and noticed the pupil being eccentric and sent him to the hospital for x-ray of the eye to rule out a foreign body within the eye.

Q16 You stated, doctor, that the pupil was eccentric. Could you be more specific in that description.

A  Well, the pupil was tear shaped rather than being round and one margin was pulled over to the side.

*    *    *    *    *    *

Q23 Was there any indication from your examination that damage to the pupil would have occurred at any date prior to August 21, 1968?

A  This I couldn't answer with any degree of certainty at all.

*    *    *    *    *    *

Q28 Doctor, assuming that an industrial employee received injury to his eye in that hot glass struck it causing him to recoil and strike sheet metal, or some other sharp object, and that subsequent examination revealed an eccentric pupil in that eye and visual acuity of less than 20/400, would it be your opinion within reasonable medical certainty that the damage to the pupil and the visual acuity of 20/400 could have resulted from the hot glass and the recoil causing the striking of a metal object?

A  I think all I can say here is that it's a possibility, I see no way to answer with certainty.

Q29 Mr. Marcum's injuries and condition appear to be consistent with the history that you obtained. Could the injury to his eye have been caused in the way he related?

A. Well, there again all I could say is that it is a possibility.

\*    \*    \*    \*    \*    \*

Q31 Doctor, based on your examination and the history that you have here revealed, do you have an an opinion based on reasonable medical certainty as the cause of the eccentric pupil and the visual acuity of 20/400?

A As far as the pupil is concerned I can only base my decision on history from the patient and his wife, who stated the pupil was not the way it was when I saw them previous to that time.

Q32 Based on that history, doctor, do you have an opinion?

A All I could say is it could happen. It is possible for a blow of this type to cause—.

Q33 Doctor, I'm going to pose a hypothetical question. Assume that a substance consisting of hot glass pops into the eye of an industrial employee that as a result of the hot glass touching him, he recoils or in some way moves his head such that a sharp object, such as a piece of sheet metal, strikes his eye ball and that upon examination of that eye ball it is revealed that the pupil is tear drop shaped or eccentric. Assuming those facts to be true, doctor, would it be your opinion, based upon reasonable medical certainty that the the eccentric condition of the pupil was caused by the eye being struck by hot glass and in turn striking a metal object?

A *I would say that the eccentric pupil was possible on the basis of the blow itself, not from the glass alone.* (Emphasis added)

Q34 That would be your opinion based on reasonable medical certainty?

A Yes."

On cross-examination, Doctor Wells testified in part:

"Q1 Doctor, in the history which you have taken from the patient, the patient did relate to you, do you recall when some substance hit his eye and he struck his eye on a piece of sheet iron, is that correct?

A That's correct.

Q2 It is your opinion that the blow to the eye by this piece of sheet iron is the cause of the tear drop shape of the pupil or the eccentricity of the pupil?

A This is comparable with the history. This could happen.

Q3 The tear drop shape of the pupil would have been caused by a blow?

A Yes, I would anticipate it had been caused by a blow."

■ The board concluded that " \* \* \* while working near this (conveyor) a piece of hot glass popped into (Marcum's) eye causing him to jerk his head suddenly and it is not clear whether he did or did not strike another object." We observe that the physician clearly stated that " \* \* \* the eccentric pupil was possible on the basis of the blow itself, not from the glass alone." Marcum testified that he " \* \* \* didn't jerk over and hit a piece of metal or anything." The history of a blow to the eye related by the physician was refuted by the claimant; therefore the medical opinion based upon that history would not sustain the finding.

■ The board's award was based upon evidence of a possibility that an admitted work-connected accident was the cause of Marcum's loss of vision. The mere possibility of the causal relationship is insufficient to support an award. Markwell &

Hartz, Inc. v. Pigman, Ky., 473 S.W.2d 842 (1971). A compensable claim was not established.

The judgment is affirmed.

All concur.