DEALERS TRANSPORT COMPANY, Appellant,

v.

Marilyn Joyce THOMPSON, James R. Yocom, Commissioner of Labor and Custodian of the Special Fund, and Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

Sept. 7, 1979.

Discretionary Review Denied Feb. 7, 1980.

Kenneth J. Tuggle, Charles E. Allen, III, Louisville, for appellant.

Stuart E. Alexander, Louisville, for Marilyn Thompson.

Gemma Harding, Deputy Gen. Counsel for Appeals, Dept. of Labor, Louisville, for James R. Yocom.

Larry D. Hamfeldt, Louisville, for Special Fund.

Before COOPER, LESTER and WILHOIT, JJ.

COOPER, Judge.

This is an appeal from a judgment affirming an award of workmen's compensation benefits in accordance with the Kentucky Workmen's Compensation Act contained in KRS Ch. 342 (the Act). The award was made to the widow and minor child of Leo A. Thompson, deceased.

Leo A. Thompson (decedent) commenced actual work for the appellant, Dealers Transport Company, (Dealers) on December 27, 1976. His last working day was Friday, December 31, 1976. He was admitted to the hospital on Monday, January 3, 1977, and died there the following Wednesday, January 5. Death was caused by a severe case of viral pneumonia.

Thereafter decedent's wife, Marilyn J. Thompson, and one of the appellees, filed a claim for workmen's compensation benefits. The basis for her claim was that her husband's fatal pneumonia arose out of his employment and for that reason was compensable.

The following facts were established at the administrative level. Prior to commencing the job with Dealers, Mr. Thomp-

son had been unemployed for approximately 13 months. After a two week training period at minimum wage, he would have been advanced to a pay scale of $7.67 per hour. Since Mr. Thompson became ill and died after working only one week, he never received any wage payment based on the higher scale.

Although hired as a truck driver, during his trainee period Mr. Thompson was required to spend most of his morning hours outside on the loading dock, while his afternoons were spent in a classroom situation. The temperature and precipitation data for the week of December 27, 1976, through December 31, 1976, were made a part of the record and are as follows: Monday, high 55, low 22; Tuesday, high 52, low 23; Wednesday, high 26, low 8, some snow; Thursday, high 43, low 8, trace of snow; Friday, high 18, low 2, trace of snow.

On December 22, 1976, decedent had undergone a pre-employment physical. No lung disease or condition was discovered at that time.

■ The Board decided, and the circuit court affirmed that Marilyn J. Thompson, claimant and appellee, met her burden of proving that her husband's death was work-related and, accordingly, was compensable. If the decision of the Board is supported by substantial evidence, we may not substitute our judgment but must affirm. Substantial evidence is evidence sufficient to enable a reasonable mind to reach a conclusion. *Smyzer v. B. F. Goodrich Chemical Co.*, Ky., 474 S.W.2d 367 (1971).

The overall question presented in this case is whether or not decedent's death as a result of viral pneumonia was work-related. If it was, then the award of benefits was proper. The determination of whether or not Mr. Thompson's death was work-related involves the legal question of coverage and the evidentiary question of causation. While the concepts of causation and coverage are easily enough understood, when stated separately within the context of a given case, they can become elusive. This is because the broad coverage language contained in the Act and the liberal construc-

tion we are required to give it must be measured against other statutory language designed to limit coverage and promote apportionment of liability between the employer and the Special Fund in certain disease cases. Our task is made easier by the excellent briefs provided by the parties to this appeal. The result we reach here reflects our opinion of what the coverage of the Act is at the present time, given adequate proof of causation in fact.

I

■ Appellant presents three issues in this appeal. The first issue is actually an umbrella for a number of arguments that it was error for the Board and the reviewing court to find decedent died as a result of pneumonia arising out of and in the course of his employment with Dealers Transport Company. Dealers first argues that the Board failed to consider critical testimony that decedent felt bad and developed a respiratory infection prior to his first day on the job. This contention is based on, and supported by, the notes contained in the hospital admission summary prepared by the attending physician, Dr. Denton. The Board chose to rely on the testimony of Mrs. Thompson that the decedent first complained of catching cold on Tuesday, December 28, 1976, after his second day on the job, and on the testimonial statement of Dr. Denton, equivocal as it was, which contradicted the admission summary and supported Mrs. Thompson's observation. We will not disturb the Board's finding on this point, notwithstanding the fact that records based on statements made by patients to a physician for the purpose of diagnosis and treatment are considered to be reliable because it is in the patient's best interest to be as accurate and truthful as possible. However, in our opinion, this case does not turn on such a narrow evidentiary point. Assuming arguendo that decedent had a viral respiratory infection the day he reported to work, there is no evidence that it could be symptomatically described as anything other than a common cold or its equivalent. Whether it was the natural progression of

this disease or the exacerbation of it by his work activities, which ultimately caused Mr. Thompson's death, presents a question of causation—not one of coverage.

■ All that is required in Kentucky for an injury or death to be compensable is that it be the result of a work-related injury. In *Seventh St. Road Tobacco Warehouse v. Stillwell*, Ky., 550 S.W.2d 469 (1976), the highest Court of the Commonwealth explained the significant impact the introduction of the "work-related injury doctrine" had on Kentucky Workmen's Compensation Law:

KRS 342.620(1) and KRS 342.610(1) merely state that a compensable injury is any work related harmful change in the human organism. The purpose of this change in the law was to expand workmen's compensation coverage to non-traumatic injuries. *Yocom v. Pierce*, Ky., 534 S.W.2d 796 (1976); *Haycraft v. Corhart Refractories Company*, Ky., 544 S.W.2d 222 (1976). It is the injury element and not the employment element of a workmen's compensation claim that the legislature meant to expand. "Work related" and "arising out of and in the course of employment" are synonymous terms. *Id.* at p. 470.

Occupational disease is a subcategory within the overall statutory concept of injury which is broadly defined as a work-related harmful change in the human organism. KRS 342.620(1). An occupational disease is for coverage purposes a special category of injury. The distinction between the two becomes significant in determining whether the provisions of KRS 342.316 are to be triggered. This rather complex section is used to determine whether all or part of the monetary liability should be shifted from the employer to the Special Fund in certain cases where the occupational disease criteria are met. *See* KRS 342.620(2).

■ A communicable disease can be an injury within the meaning of the Act. But, it does not follow that a communicable disease must always meet the occupational disease criteria in order to be covered. Compare KRS 342.620(1) and (2); *also see Haycraft, supra*, at p. 224.

■ Given the broad statutory language and the subjective and objective tests provided by the Court in *Princess Mfg. Company v. Jarrell*, Ky., 465 S.W.2d 45 (1971), the task of determining whether a disease is an occupational disease as opposed to an injury could be a difficult one. Under the regime of *Princess, supra*, an occupational disease may be found if there is substantial evidence that either employment conditions specifically affected the employee in a manner resulting in contraction of disease, or employment conditions generally can to a reasonable medical probability cause a particular disease or condition in a given class of workers.

■ We think that appellee failed to produce evidence sufficient to meet either of the *Princess* tests. She failed to prove beyond, at most, a mere possibility that decedent was actually exposed to the ultimately fatal pneumonia virus while at work. The mere possibility of disease exposure is not sufficient to meet the burden of proof as to disease causation. *Cf. Marcum v. General Elec. Co.*, Ky., 479 S.W.2d 640 (1972). Pneumonia is an ordinary disease of life. No attempt was made to prove that loading dock workers as a class are more likely or are more susceptible to contracting pneumonia than the public at large. Therefore, the objective test of *Princess, supra*, was not met either.

■ Appellee, however, did produce competent medical testimony by two doctors from which it could be inferred that the conditions under which decedent worked could have lowered his resistance to pneumonia or could have caused a mild viral infection to become much more severe—even fatal. The Board chose to believe this testimony as was its fact-finding prerogative. We are of the opinion that this evidence constitutes substantial evidence that a work-related injury occurred which produced, or substantially contributed to, decedent's fatal pneumonia.

■ Appellant would disagree with our holding based on the contention that the

disease exception in KRS 342.620(1) bars coverage. The communicable disease coverage exception represents a legislative policy decision that the employer should not be held liable for disability caused by a communicable disease where the probability of contracting that disease is no greater for the worker because of his job situation than it is for him as a member of the general public.

However, the statute does not rule out coverage for communicable diseases where the risk of contracting such disease is increased by the nature of the employment. Professor Larson discusses the "increased risk" doctrine at some length in his learned treatise. See 1 Larson's Workmen's Compensation Law, Section 8.00 et seq. (Larson). Section 8.41 of Larson at p. 3–36 states:

Sunstroke, heat prostration, freezing pneumonia and other effects of exposure to heat and cold arise out of the employment in all jurisdictions if the exposure is accentuated by the nature and conditions of the employment, or, to use a familiar formula, if the exposure is greater than that to which the general public is subject. So if . . . becoming wet and chilled produces pneumonia or other harm the injury may be found to arise out of the employment.

At Vol. I A, Ch. 38.50, n. 84, p. 7–94, Larson notes a conflict among jurisdictions as to whether pneumonia, though clearly work-related, was contracted "by accident." However, this need not concern us as under present Kentucky law an award of benefits does not require a showing of accidental cause. See KRS 342.620.

1 Larson at Section 8.42, p. 3–38, recognizes that the main difficulty in utilizing the "increased risk" doctrine lies in defining the general public with which comparison is to be made. The basic error in application lies in making the comparative group too narrow as exemplified by the ruling—later overruled in Consumers Company v. Industrial Commission, 324 Ill. 152, 154 N.E.2d 423 (1926), where a worker with frozen hands was denied compensation because

five other workers, engaged in the same work at the same place and time, suffered no harm. That, according to the court, showed that by reason of his occupation the employee was not exposed to a special or peculiar danger from freezing greater than that shared by other persons in the same locality. We reject this approach as too narrow.

1 Larson at Section 8.42, p. 3–41 states, and we agree, that:

The proper application of the increased risk test is exemplified by the following beautifully blunt statement in a Texas sunstroke case:

"In the case before us the very work which the deceased was doing for his employer exposed him to a greater hazard from heat stroke than the general public was exposed to for the simple reason that the general public were not pushing wheelbarrow loads of sand in the hot sun on that day." [American Gen. Ins. Co. v. Webster, 118 S.W.2d 1082 (Tex.Civ.App.1938).]

The other principal respect in which the increased risk has sometimes been unfairly applied is the failure to recognize that the obligations of employment will often not permit the employee to obtain shelter or relief from the elements when such relief is theoretically available to him.

The standards implicit in the above quotation can easily be adapted to the facts of this case. Mr. Thompson's work exposed him to a greater risk from pneumonia than the general public was exposed to for simple reason that the general public was not working on a loading dock with a viral infection in cold and damp December weather. The basic obligation and nature of his employment required him to work outside whether he really should have or not. The circumstances of decedent's prior unemployment and the fact that he was a probationary employee would support an inference that decedent's freedom of action for self-preservation was circumscribed by the conditions of his employment. For these reasons it was appropriate to conclude that the risk of injury or death was in-

creased by the nature of his job duties. The resulting death being causally attributable to working conditions is therefore compensable.

The result we reach here is in accordance with the liberal construction we are required to give the Act. KRS 342.004. It is *not* intended to be read as a precedent for a flood of claims based on colds, grippe and endless other common ills allegedly arising out of employment. Many claims of that type would be barred by the durational requirement contained in KRS 342.040. KRS 342.040 would not bar a claim based on a work-related death, duration obviously being irrelevant in such a case.

From a strict legal standpoint, this case is not a disease case. The pneumonia and death were resultant effects of a work-related injurious cause which was the outside exposure which contributed to deceased resistance and exacerbation, to the point of death, of a normally nondisabling common illness. Our decision is basically that the working conditions were a substantial factor causing Mr. Thompson's death. Exactly where and when he was originally exposed to the virus is immaterial under this approach. Stated another way, the compensable injury of this case is not the viral infection per se, but the work-related aggravation of it which resulted in death. By that standard this is not an actual exposure to disease case and no precedent in that regard.

The decisions in *First National Stores v. Hester*, Ky., 393 S.W.2d 603 (1965); and *Berry v. Owensboro Ice Cream & Dairy Products*, Ky., 376 S.W.2d 302 (1964), relied upon by appellant need not be read as conflicting with our decision here. For example, *Berry, supra*, involved a failure to prove causation while the proof presented here was sufficient to establish causation. But to the extent that they might be in conflict, we must be guided by the statutory enactments of 1972 rather than any prior case decisions.

II

■ The second point we must decide is whether or not the Special Fund should bear any liability. We have previously held that KRS 342.316 does not apply, and we will not discuss that point further.

■ We fail to see how the Special Fund has any liability under an "arousal" theory based on KRS 342.120. This is because there is evidence in this record sufficient to enable a reasonable mind to conclude that the working conditions to which decedent was exposed were the single substantial cause of his death. This view is best understood if one considers the injury resulting in death to be the aggravation of the disease rather than the disease itself. Under KRS 342.120(3) liability would be placed on the employer since the work-related injury independently of any other factor was the substantial cause of death. Moreover, we do not think that decedent's disease fell within the operative scope of KRS 342.120. Even if we assume that decedent had a cold prior to beginning work, that would not constitute an active disability. A disease or condition is dormant if it was occupationally nondisabling prior to a subsequent injury. *Yocom v. Loy*, Ky., 573 S.W.2d 645 (1978). *Also see Haycraft, supra* and *Yocom v. Spalding*, Ky., 547 S.W.2d 442 (1977). There is no testimony in this case that decedent's cold kept him from performing his work duties. However, not every pre-existing departure from a normal state of health triggers the operation of KRS 342.120. In a studied analysis of the Special Fund concept, this Court in *Yocom v. Jackson*, Ky.App., 554 S.W.2d 891, 896 (1977), stated:

> However, not every departure from the normal state of health constitutes a dormant condition within the meaning of the statute. Considering the purpose of funds such as the Special Fund, this court concludes that it must be reasonably foreseeable that the abnormality may become disabling to some degree as a result of the ordinary stresses of everyday life over the employee's expected work life before it can be considered a dormant condition within the meaning of KRS 342.120.

The Court went on to say:

> It was not the intention of the legislature to relieve employers from the natural

consequences of their employees' work related injuries merely because the degree of disability was affected by some physical or mental characteristic which ordinarily would never have affected the employees' ability to work. *Id.* at 897.

Gauged by the above standards, liability rests solely on the employer. Ordinarily, colds do not progress into fatal pneumonia, and ordinarily they do not affect an employee's ability to work except, perhaps, in a temporary manner. In short, we do not believe that the Legislature intended a cold, or other viral infection of a similar nature, to be a dormant nondisabling disease within the meaning of the statute because the potential for occupational disability is not intrinsic to the condition to a reasonably foreseeable degree.

■ The decision in *Jackson, supra,* was a coverage interpretation based on a determination of legislative intent. It can be translated into a standard governing the determination of causation-in-fact in cases where the Board is faced with the question of apportionment vel non between the employer and the Special Fund. That is, where it is not reasonably foreseeable that a pre-existing disease or condition will of its own natural course result in permanent or lengthy indeterminate bodily functional impairment and if the evidence reasonably shows that the substantial cause of the occupational disability or death arose out of the working conditions, then a finding that all liability rests on the employer is permissible.

Applying the foregoing standard in conjunction with the overall substantial evidence test, we conclude the Board did not err in deciding as it did. Although, it is perhaps possible, it is not reasonably expectable that a common cold or equivalent viral infection will develop into fatal viral pneumonia absent some additional causal factor. The evidence clearly demonstrated that decedent's fatal pneumonia arose out of his employment and that the working conditions themselves were the principal and overriding cause of his illness and death. There was no substantial evidence of any other cause. That being the case the employer alone is liable.

No other questions are raised which merit our consideration. The judgment appealed from is affirmed.

WILHOIT, J., concurs.

LESTER, J., dissents.

LESTER, Judge, dissenting.

The majority opinion concludes that the Special Fund incurs no responsibility for compensation of disability brought on by the work-related aggravation of a viral infection. The evidence did not connect the communicable disease to Thompson's work. But, this employee would not have encountered any greater risk of disability because of his occupation than someone not so employed, if he did not have a cold. The medical experts agreed that exertion in cold damp weather would not cause a virus. The proof shows that Thompson's death resulted because the labor involved in his occupation aroused a dormant nondisabling condition. The condition was dormant and nondisabling because it did not affect Thompson's ability to labor until it was aroused into disabling reality. The majority relieves the Special Fund of liability by determining that viruses are not the sort of conditions embraced by KRS 342.120(b). I would not exclude as a matter of law the broad category of illness, commonly known as the cold, from the ambit of dormant nondisabling conditions, the arousal of which into disabling reality creates a liability of the Special Fund.

The majority relies on language in *Yocom v. Jackson,* Ky.App., 554 S.W.2d 891, 896 (1977), which limits the dormant conditions of KRS 342.120 to those which satisfy the standard

> that it must be reasonably foreseeable that the abnormality may become disabling to some degree as a result of the ordinary stresses of everyday life over the employee's expected work life.

However, I submit that inclusion of Thompson's condition under KRS 342.120(b) does

not violate this test. Within general experience what appears to be an ordinary cold can lapse into a serious sickness due to "stresses of everyday life." We do not have before us a disability increased because of a psychological or physical trait unique to the individual as discussed in *Jackson, supra.* I perceive no conceptual difference from the standpoint of Special Fund liability between the disability an employee whose vertebra have undergone a degenerative change suffers due to the effect that hard labor has had on his back, and Thompson's death which was produced by the effect that his work had on his cold. Most everyone who catches a cold, even if he works in adverse conditions, recovers without incident. However, a person who has a latent defect in his spine may never have any difficulty doing his job if he does not have to perform arduous tasks. Thompson's work would probably not have caused him any disability if he did not have a cold. His death as a result of the arousal of his virus conclusively demonstrates the grave potential of this dormant condition. The Special Fund was designed to pay the compensation for disability remaining after the employer provides for the compensation for the degree of disability which would have resulted had there been no dormant, but aroused condition. KRS 342.120(3)(4). I would reverse with directions that the circuit court remand to the Board for the assessment of the statutory liability against the Special Fund. *See City of Louisville, Division of Police v. Laun,* Ky.App., 580 S.W.2d 232 (1979).