Helen Joyce CHAMPION, Appellant,

v.

Larry D. BEALE, Director, Special Fund; McCracken County Board of Education; Walter W. Turner, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Larry D. BEALE, Director of Special Fund, Appellant,

v.

Helen Joyce CHAMPION; McCracken County Board of Education; Walter W. Turner, Administrative Law Judge; and Workers' Compensation Board, Appellees.

McCRACKEN COUNTY BOARD OF EDUCATION, Appellant,

v.

Helen Joyce CHAMPION, Appellee.

Nos. 91-SC-308-WC, 91-SC-327-WC and 91-SC-328-WC.

Supreme Court of Kentucky.

April 9, 1992.

Publication Ordered June 19, 1992.

Robert M. Lindsay, Louisville, for Champion.

Cathy Utley Costelle, Stephen C. Boyd, Labor Cabinet—Special Fund, Louisville, for Beale, Director of Special Fund.

Richard L. Walter, Paducah, for McCracken County Bd. of Educ.

## OPINION OF THE COURT.

Claimant filed for workers' compensation benefits alleging an occupational disability due to bronchitis, asthma, and allergies which became symptomatic with irritants in the work place. The Administrative Law Judge (ALJ) dismissed the claim on the grounds that her condition could not be fairly traced to the employment as the proximate cause and therefore her disability did not arise out of, and in, the course of employment, pursuant to KRS 342.0011 and former KRS 342.620. The Workers' Compensation Board (Board) and the Court of Appeals affirmed the decision of the ALJ. We agree that there is substantial evidence of probative value to support a finding of noncompensability and that the evidence is not so overwhelming as to compel a finding in claimant's favor. *Holman Enterprise Tobacco Warehouse v. Carter*, Ky., 536 S.W.2d 461 (1976), *Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418 (1985).

Claimant has suffered from upper respiratory difficulties from 1969 with bouts of bronchitis resulting in hyperventilation and upper respiratory infections. In 1977 she began treatment with an allergist and was later diagnosed as being allergic to grasses, weeds, trees, mold, dust, dust mites, cats, food preservatives, gum acacia, gum arabic, and fragrances. Weekly vaccine injections provided little if any relief, and claimant's condition continued to worsen. At this time, claimant began teaching physical education at Farley Elementary School, in a newly constructed gymnasium. From 1979 to 1984, claimant taught at two other schools in addition to teaching at Farley. From 1984 to 1986 she taught at Farley exclusively. In 1986, a pulmonologist diagnosed claimant as having bronchial intrinsic asthma, also known as adult asthma, for which there is no known cause.

Testimony was elicited regarding a condition known as "new building syndrome," indicating that new buildings have a greater accumulation of allergens and leeching of noxious vapors which subside with the passage of time. A specialist in allergy and immunology testified that claimant's exposures in the new gymnasium aggravated her preexisting pulmonary and allergic problems. No conclusive proof, however, was presented comparing her exposure to

these irritants at work and at home or other places.

After considering the evidence, the ALJ stated that claimant is unable to work in any environment which contains those substances to which she is either allergic or which trigger her intrinsic asthma. He concluded that because she cannot practice her profession as a physical education instructor in a completely sterile environment, she is totally, occupationally disabled. The ALJ dismissed the claim, however, on the grounds that her disability is not work-related:

8. Picking and choosing from the evidence as I am entitled to do under *Caudill v. Moloney's [Maloney's] Discount Stores*, Ky., 560 S.W.2d 15 (1977), and exercising the prerogative of the trier of fact to believe or disbelieve all or any part of such evidence, I find that the plaintiff does not suffer from an occupational disease; her asthmatic/allergic condition is not work related; and, her resultant disability is noncompensable under the provisions of the Act. I am convinced that the plaintiff's work caused neither her asthmatic nor allergic condition and that she is merely a member of a large part of the population who is allergic to substances commonly found in the general environment. The only relationship between the work and her impaired condition is that the work place, a gymnasium, probably contains significantly higher levels of some of the irritants, *i.e.* molds and dust, than are found in other places. The mere fact that plaintiff cannot function in the work environment does not establish a causal nexus between the work and her disability.

9. The plaintiff travels closest to the point of recovery upon evidence with respect to "new building syndrome," although she freely admits that her primary problem is that of asthmatic bronchitis. In both *Princess Manufacturing Company v. Jarrell* [465 S.W.2d 45 (Ky. 1971)], and *Farmers Rural Electric Co-op Corporation v. Cooper* [715 S.W.2d 478 (Ky.App.1978)], *supra,* the allergic worker was permitted to recover benefits upon a demonstration that he/she developed a hypersensitivity to an irritant in the work environment. Both Dr. Randolph and Dr. Anderson touched upon this sort of causation in their testimony with words to the effect that materials in the air of the new building triggered plaintiff's hypersensitive airway syndrome. I conclude however that the instant case is distinguishable from *Jarrell* and *Farmers* as in the cited cases the work caused the hypersensitivity to the extent that a prolonged or unusual exposure caused a sensitization to a particular allergen and an allergic reaction developed thereafter. To the contrary, herein, the plaintiff had an active allergic condition for which she received testing and treatment prior to work in the new building. In the words of former KRS 342.620(3), plaintiff's allergic condition cannot be fairly traced to the employment as the proximate cause and therefore her disease does not arise out of, and in, the course of employment, pursuant to KRS 342.0011 and former KRS 342.620.

The Board affirmed the decision of the ALJ. Likewise, the Court of Appeals upheld the Board's affirmance of the ALJ's dismissal, noting that claimant's allergies are to substances commonly found in the general environment and that the evidence was not conclusive that her work place aggravated her condition more so than would any other location.

Since 1971, we have recognized that an allergic reaction may be an occupational disease compensable under the Act.

Allergic reactions are caused by an inherent weakness or inability in certain people to tolerate exposure to substances known as allergens. Often this inherent weakness remains hidden for years but a sufficiently prolonged or unusual exposure will cause a sensitization to a particular allergen and an allergic reaction will develop. This allergic reaction will not develop, however, in other individuals equally exposed to the same substance unless they too are affected with the inherent inability to withstand such expo-

sure.... Her allergic reaction is work-connected in the sense that it was caused by a condition which she encountered in her work and this condition was encountered at work in a far greater degree than it would have been encountered in either employment generally or outside the employment. *Princess Manufacturing Co. v. Jarrell,* Ky., 465 S.W.2d 45, 47 (1971).

▮ Claimant argues that the decisions below are based upon the misconception that a worker must produce evidence that the work environment caused the underlying allergic/asthmatic condition. We believe claimant has read too narrowly the decisions below which recognize that the cause of the underlying allergic/asthmatic condition is either unknown or is simply a predisposition to a particular sensitivity. It is the work-related allergic reaction that may be disabling. The ALJ properly recognized in his review of *Princess* and *Farmers Rural Elec. Co-op Corp. v. Cooper,* Ky.App., 715 S.W.2d 478 (1986), that it is the development of the hypersensitivity resulting in a disabling allergic reaction that must be work-related. This is not to say that the inherent weakness itself must be work-related. We believe the decisions below correctly recognized this distinction.

We agree with the ALJ that claimant's reliance upon *Princess* does not support compensability in this case. In that case, we joined the majority of jurisdictions in holding that allergic reactions may be compensable, occupational diseases under certain circumstances. See Larson, *Workmen's Compensation Law,* § 41.62. The allergic reaction in *Princess* was caused by the employment which precipitated the development of the condition and rendered the worker's condition permanently disabling as to the garment industry.

The *Princess* Court noted that the worker employed within the garment industry developed a sensitization to unlaundered fabrics, an allergen that she encountered at work in a far greater degree than would have been encountered in other employment generally or outside the employment. We believe this was an important factor in

the *Princess* decision for it provided a recognizable link between the disease and some distinctive feature in the claimant's job. In other words, the conditions at work carried with them a risk of incurring the disease greater than that which prevailed in employment and living conditions in general. Although the rarity of the allergy or condition is immaterial, and the quantitative size or extent of the exposure is immaterial if it was sufficient to produce the disease in combination with the worker's unusual sensitivity, it is central to consider whether the intensity and nature of the worker's exposure to the allergen is substantially similar off the job and on. *Larson,* § 41.62; see also, *Dealers Transport Co. v. Thompson,* Ky.App., 593 S.W.2d 84 (1979), discussing the increased risk doctrine.

Claimant argues that *Princess* and its progeny do support the proposition that the work-related exacerbation or aggravation of an underlying nonoccupational disease is compensable. We disagree. *Princess* involved a preexisting weakness or inability to tolerate exposure to certain allergens. By the nature of the employment, the worker suffered a prolonged or unusual exposure to unlaundered fabric causing a sensitization to that particular allergen and an allergic reaction developed, resulting in a permanently harmful change in the worker's overall physical condition. Similarly, the *Farmers* case involved a preexisting inability to tolerate exposure to irritating substances emanating from computer terminals. These cases did not involve preexisting diseases, but merely recognized that an allergy is by nature, a preexisting weakness.

▮ In the case at bar, claimant had been symptomatic for years preceding the medical recommendation to cease work, and her symptoms were triggered by substances contained in the environment generally. It was not shown that claimant's work caused a sensitization to a particular allergen resulting in a permanently harmful change in her physical condition. To be compensable, an occupational disease must result from an exposure occasioned by the

nature of the employment related to a risk connected with the employment. KRS 342.0011(3). Even if we accept that the gym contained some of the offending irritants, KRS 342.0011(3) is not satisfied merely by showing that the worker is symptomatic in the specific place that she happens to work for this is not a recognizable risk of the teaching profession.

Claimant also relies upon *Dealers Transport Co. v. Thompson*, Ky.App., 593 S.W.2d 84 (1979) in support of the position that the work-related aggravation of an underlying, noncompensable disease is compensable. In *Thompson*, the court stated that it was not dealing with a disease case, but that the worker's death was the result of a work-related injurious cause (exposure to inclement weather due to work either lowering his resistance to pneumonia or causing a mild infection to become much more severe), which produced or substantially contributed to the fatal pneumonia.

Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact. Claimant maintains that the ALJ did find a work-related aggravation by stating that the only relationship between the work and claimant's impaired condition is that the work place probably contains higher levels of some of the irritants. We do not read this as a finding of work-related aggravation.

■ The ALJ did specifically find that the fact that claimant cannot function in the work environment does not establish a causal nexus between the work and her disability. This is supported by the medical testimony that the triggering irritants can be found at work, at home, and in the environment generally. The evidence showed that her symptoms are triggered also by trees, grasses, weeds, cats, feather pillows, food preservatives, and other substances not contained in the gymnasium. While there was testimony that her condition worsened during the winter months, seemingly coinciding with the school term, Dr. Culbertson testified that cold air is a known precipitant of asthma. He further stated that he did not know if there was any higher concentration of dust, molds, or other irritants in the gym than may be present in any other place that claimant may occupy during the course of the day. While some of the medical testimony linked claimant's condition to the work environment, this was based solely upon claimant's self-analysis of the conditions present there.

■ While it is not necessarily incumbent upon the claimant to prove the identity of the offending substance, see *Farmers Rural Electric Cooperative v. Cooper*, Ky. App., 715 S.W.2d 478 (1986), it must be evident that the irritant exists at work to a greater degree than in other places generally to establish a link between the condition and some distinctive feature of claimant's job. This proof is less burdensome in instances where the offending substance is obviously associated with the work (i.e. *Princess*, unlaundered fabric encountered in the garment industry; *Farmers*, chemicals emanated from computer terminal encountered in office by billing clerk). Where, as in this case, the worker's sensitivities are wide-ranging and may be encountered in varying degrees in numerous environments, it is not enough that the worker is symptomatic at work, for this alone does not prove that the worker suffered an increased risk due to the employment.

The Special Fund and the employer have filed cross-appeals disputing the ALJ's finding of 100% disability. It is unnecessary for us to reach this issue in light of our decision to uphold the dismissal of the claim.

The decision of the Court of Appeals is affirmed.

All concur.