RENDERED:  AUGUST 29, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0540-WC

CHRISTOPHER THOMAS                                        APPELLANT


PETITION FOR REVIEW OF A DECISION
v.          OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-23-00706


RUSSELLVILLE ELECTRIC PLANT
BOARD; HONORABLE CHRIS
DAVIS, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD OF
KENTUCKY                                                  APPELLEES


OPINION
AFFIRMING IN PART AND REVERSING IN PART

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND LAMBERT,
JUDGES.

THOMPSON, CHIEF JUDGE:  Christopher Thomas appeals from an opinion of

the Workers' Compensation Board ("the Board") vacating a workers'

compensation award and remanding the case to the Administrative Law Judge

("ALJ") for additional proceedings. While we do not agree with some of the conclusions of the Board, we do believe that the Board correctly vacated the award and remanded to the ALJ.

## FACTS AND PROCEDURAL HISTORY

Appellant was employed as an electrical lineman supervisor by the Russellville Electric Plant Board. Appellant contracted COVID-19 in July of 2021, and believed he contracted COVID while at work. Specifically, Appellant believed he contracted COVID while riding in a work vehicle with another employee, Mark Venable, who tested positive for COVID a few days before Appellant tested positive. Appellant suffered severe complications from COVID and was unable to return to work.

Appellant eventually filed for workers' compensation benefits due to the effects of COVID. The ALJ assigned to the case found that Appellant's COVID injuries were work related and awarded him benefits. The Electric Plant appealed to the Board, which held that the ALJ did not use the proper legal standard in finding that the COVID injuries were work related. The Board also held that the ALJ made erroneous findings of fact. This appeal followed.

## STANDARD OF REVIEW

[Kentucky Revised Statutes (KRS)] 342.285 designates the ALJ as the finder of fact. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985), explains that the fact-finder has the sole authority to

-2-

judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky. 1986), explains that a finding that favors the party with the burden of proof may not be disturbed if it is supported by substantial evidence and, therefore, is reasonable.

*AK Steel Corp. v. Adkins*, 253 S.W.3d 59, 64 (Ky. 2008). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B. F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971) (citation omitted). "The function of further review of the [Board] in the Court of Appeals is to correct the Board only where the . . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

## ANALYSIS

Appellant's first argument on appeal is that the Board erred when it determined that the ALJ used the wrong legal standard. For a communicable disease to be considered a work-related injury, the illness must be acquired at work and "the risk of contracting the disease is increased by the nature of the employment." KRS 342.0011(1). This increased risk has been interpreted by our courts to mean, did an employee's work expose him or her to a greater risk of

-3-

catching a communicable disease than the general public. *Dealers Transport Co. v. Thompson*, 593 S.W.2d 84, 89 (Ky. App. 1979).

In the case at hand, the Board held that the ALJ made sufficient findings that Appellant caught COVID while at work but did not make any findings or conclusions that Appellant's employment made him more susceptible to catching COVID than the general public. Appellant argues that the ALJ did utilize the correct standard. We agree with Appellant. The ALJ found that Appellant contracted COVID at work because the linemen would frequently ride to work sites together in the same truck and multiple linemen were coming down with COVID in the days leading up to Appellant testing positive. The ALJ specifically mentioned that Appellant was required to ride in a vehicle with Mr. Venable after he informed a supervisor that he was symptomatic. The ALJ further found that none of Appellant's immediate family, those who he lived with and those who frequently visited, tested positive for COVID prior to Appellant. Finally, the ALJ relied on a report from Dr. Bob Moldoveanu that stated Appellant contracted COVID from work.

As for Appellant's work making him more susceptible to contracting COVID than the general public, the ALJ specifically discusses this issue on page 20 of his opinion and order. The ALJ discusses how Appellant was an essential worker who could not stay at home in lockdown like other workers. The ALJ also

discussed how Appellant was required to ride in a truck with other employees who were experiencing COVID symptoms, like Mr. Venable, and was unable to adequately socially distance. We believe this satisfies the second prong in determining whether a communicable disease is a work-related injury.

While we believe that the ALJ used the correct legal standard to determine Appellant's COVID injuries were work related, we agree with the Board that the ALJ made an erroneous finding of fact. The Board concluded that the ALJ made an erroneous finding that Appellant was required to ride in a vehicle with Mr. Venable after he was symptomatic and after he informed a supervisor, Dale Vowell. We agree. There was no evidence that Appellant was required to ride with other employees. While employees frequently rode together, it was not a requirement. Furthermore, there was no evidence that Mr. Venable was symptomatic when he rode with Appellant. In addition, Mr. Venable did inform Mr. Vowell that he had been exposed to a family member who had tested positive for COVID, but he himself had not tested positive and did not have any symptoms. Mr. Venable was allowed to continue working after this. Two days later, Mr. Venable informed Mr. Vowell that he was experiencing symptoms and Mr. Vowell required Mr. Venable to stay home, get tested for COVID, and not return to work until he received the test results.

Appellant being required to ride in a vehicle with an employee who was knowingly symptomatic was an erroneous finding, and since this finding was an essential part of the ALJ's work-related injury analysis, the case must be remanded for the ALJ to correct this erroneous finding and determine anew whether Appellant's COVID injuries were work-related.

Even though we have held that the case must be returned to the ALJ, we must also discuss one other issue. The Board also held as erroneous the ALJ's finding that Dr. Moldoveanu concluded Appellant's COVID was work related. Dr. Moldoveanu's report stated:

> Our patient had a diagnosis of COVID associated with respiratory failure and prolonged hospitalization. He continues to have persistent respiratory distress up to the current time which is supported by the evidence on the [pulmonary function test]. Although COVID was endemic during 2021 he is most likely to have contracted the disease [from] close personal contacts, such as during his work as a manager.

The Board believed the ALJ misunderstood Dr. Moldoveanu's report. The Board concluded that the phrase "such as during his work as a manager" did not mean Appellant contracted COVID at work, but was merely an example of where he could have contracted COVID.

We disagree with the Board as to this issue because Dr. Moldoveanu's report also indicates Appellant's COVID was work related in other sections. Just before the above-quoted section of the report are places for Dr. Moldoveanu to

check certain yes or no boxes. One section asks: "Within reasonable medical probability, is plaintiff's disease or condition causally related to his/her work environment[?]" To this, Dr. Moldoveanu selected the "Yes" option. Another section then asks: "Within reasonable medical probability, is any pulmonary impairment caused in part by factors in plaintiff's work environment (e.g., coal dust, chemicals)?" Dr. Moldoveanu selects the "Yes" option for this question too. Based on the totality of Dr. Moldoveanu's report, it was not clearly erroneous for the ALJ to find that Dr. Moldoveanu concluded Appellant's COVID was work related. The Board erred as to this issue.

Appellant raises other issues on appeal; however, because the case is being remanded to the ALJ to make a new work-related injury determination, these issues are moot.

## CONCLUSION

Based on the foregoing, we believe that the Board erred in holding that the ALJ used the incorrect legal standard in determining that Appellant's COVID injuries were work related. We also reverse the Board's finding that the ALJ erred in his interpretation of Dr. Moldoveanu's report. We affirm the Board's conclusion that the ALJ made a clearly erroneous finding regarding Appellant being required to ride in a vehicle with a symptomatic Mr. Venable. Although we conclude that the Board did err in its opinion, the Board was ultimately correct that

the workers' compensation award should be vacated, and the case remanded to the ALJ.

ALL CONCUR.

BRIEF FOR APPELLANT:

Jeffery A. Roberts
Murray, Kentucky

BRIEF FOR APPELLEE
RUSSELLVILLE ELECTRIC
PLANT BOARD:

R. Christion Hutson
Paducah, Kentucky