Kenneth W. WILSON, Jr., Appellant,

v.

SKW ALLOYS, INC.; Robert L. Whittaker, Acting Director of Special Fund; Hon. Thomas A. Nanney, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 93–CA–002818–WC.

Court of Appeals of Kentucky.

Feb. 24, 1995.

Craig Housman, Housman & Sparks, Paducah, for appellant.

Teresa Moss Groves, Boehl, Stopher & Graves, Paducah, for appellee, SKW Alloys.

Angeline B. Golden, Labor Cabinet, Louisville, for appellee, Special Fund.

Before LESTER, C.J., and JOHNSON and JOHNSTONE, JJ.

JOHNSON, Judge:

Kenneth W. Wilson, Jr. (Wilson) seeks review of an opinion of the Worker's Compensation Board (Board) which affirmed the Administrative Law Judge's (ALJ) denial of vocational rehabilitation benefits under Kentucky Revised Statutes (KRS) 342.710(3). We reverse and remand.

The facts of this case are basically undisputed. On February 11, 1991, twenty-seven-year-old Wilson sustained a herniated disc in a fall while employed as a foundry laborer for

SKW Alloys, Inc. (employer), in Calvert City. After back surgery to remove the disc, he was advised by his doctors that it would be necessary for him to find lighter work than the manual labor he did at the foundry. While his work was basically unskilled in nature, Wilson was earning approximately $12.00 per hour at the time of his injury. His only previous employment was during high school as a part-time sales clerk in the sporting goods department of a Wal–Mart store for which he received the minimum wage, and he worked briefly as a correctional officer at the West Kentucky Farm Center in Lyon County where he received $5.60 an hour in compensation.

Administrative Law Judge Thomas A. Nanney, in an opinion dated September 28, 1992, found Wilson entitled to workers' compensation benefits based upon a finding of twenty-five percent permanent partial occupational disability. However, Wilson's claim for vocational rehabilitation benefits was denied on the basis that he retained the capacity to do his past work as a retail sales clerk (described by the ALJ as "salesman") or correctional officer. Wilson appealed the denial of rehabilitation benefits to the Board which in an opinion rendered October 22, 1993, in a 2–1 decision with Member Turner dissenting, affirmed the ALJ. This appeal followed. We are presented with two questions: (1) whether KRS 342.170(3) requires a determination that work for which a worker has previous training or experience be "suitable employment" before rehabilitation benefits may be denied; and (2) whether rate of pay is relevant to such a determination.

KRS 342.710(3) reads in pertinent part: "When as a result of the injury [the employee] is unable to perform work for which he has previous training or experience, he shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him to suitable employment." This Court has previously held that a factual finding of whether an employee "is unable to perform work for which he has previous training or experience" is mandatory when requested by a claimant seeking to qualify for rehabilitation benefits. *Edwards v. Blue-*

*grass Containers Division of Dura Containers, Inc.,* Ky.App. 594 S.W.2d 900, 902 (1980). But the scope of a worker's right to vocational rehabilitation services pursuant to this section has not been addressed by our courts.

The employer contends that an award of rehabilitation benefits is improper under the law and evidence since the ALJ found Wilson able to perform either of his previous jobs. The employer argues that the statute applies only where the employee, as a result of the injury, is unable to perform "all" work for which he has previous training or experience. Wilson argues that he is entitled to rehabilitation services because the past work he is capable of performing will not provide earnings comparable to the work he was performing at the time of his injury. The Board in its opinion took a third approach, reasoning that "the rehabilitation statute [ ] was designed for claimants who had previously developed particular 'expertise' in a line of work, and whose injury prevents them from continuing to pursue their chosen career [ ] [and that] KRS 342.710 is not applicable simply because an injured worker suffers a decrease in wages." Under the Board's approach an unskilled injured worker would never be eligible for vocational retraining benefits. Under the employer's approach an unskilled injured worker would not be eligible for vocational retraining benefits if unskilled work was all he had ever done and he retained the ability to do unskilled work in some lesser capacity. We disagree with the views of the employer and the Board. Contrary to the employer's argument, this is not a case where the literal application of the statute resolves the issue. The statute is ambiguous in that it is unclear as to what "work" is included in the phrase "work for which he has previous training or experience." The employer's approach requires interpreting the controlling provision with the word "all" impliedly modifying "work." The Board's view that KRS 342.710 was enacted merely to protect and serve skilled workers requires interpreting this provision with the word "skilled" impliedly modifying "work."

The interpretation to be given a statute is a matter of law, and we are not

required to give deference to the decision of the Board. *Newberg v. Thomas Industries,* Ky.App. 852 S.W.2d 339, 340 (1993). In determining a claimant's right to vocational rehabilitation benefits, we must adhere to the general rule that the workers' compensation statutes will be liberally construed to effect their humane and beneficent purposes. *Oaks v. Beth–Elkhorn Corporation,* Ky., 438 S.W.2d 482, 484 (1969).

> [T]he words of the statute must be construed reasonably and liberally with the view of applying the beneficient [sic] provisions of the statute so as to effectuate its purposes, and to extend them to every class of workman and employee that can fairly be brought within the provisions of the law.

*Bob White Packing Company v. Hardy,* Ky., 340 S.W.2d 245, 247 (1960), *quoting Free v. McEver,* 79 Ga.App., 831, 54 S.E.2d 372, 374. *See also* KRS 446.080(1). But while liberal construction is proper to effect a beneficent purpose, a statute should not be construed so as to give it a meaning which the language of the statute does not fairly and reasonably support as "it is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there." *Gateway Construction Company v. Wallbaum,* Ky., 356 S.W.2d 247, 248–249 (1962).

KRS 342.710(1) states that "[o]ne of the primary purposes of this chapter shall be restoration of the injured employee to gainful employment." Further, KRS 342.710(3) provides that the gainful employment to which the injured employee that is eligible for rehabilitation is to be restored must be suitable employment. Clearly, a purpose of workers' compensation legislation is to restore the injured worker as soon as possible and as near as possible to a condition of self-support as an able-bodied worker.

> Workers' Compensation was developed not just to compensate a worker who has been injured on the job, but also to enable the worker to reenter the job market and become employed again in a position as near as possible in pay and status to the one the claimant has been forced by injury to leave.

*Smith v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 250, 260 (N.D.1989) *citing Frame v. Crown Zellerbach,* 63 Or. App. 827, 828–829, 665 P.2d 879, 880–881 (1983).

■ In light of the spirit and purpose of the workers' compensation statutes, we hold that "work for which an [employee] has previous training or experience" must be suitable employment. By "suitable employment" we mean work which bears a reasonable relationship to an individual's experience and background, taking into consideration the type of work the person was doing at the time of injury, his age and education, his income level and earning capacity, his vocational aptitude, his mental and physical abilities and other relevant factors both at the time of the injury and after reaching his post-injury maximum level of medical improvement. It would be unreasonable and unconscionable to force an injured worker who had, by working conscientiously over the years, advanced to a responsible, well-paying, albeit unskilled position to start over at an unskilled job paying the minimum wage by denying him the rehabilitation benefits needed to qualify him for a skilled job with earnings comparable to his prior employment. We take judicial notice of the fact that high-paying unskilled jobs are diminishing rapidly, and that every year brings a greater requirement that workers be skilled in order to qualify for the higher-paying jobs. To deny a permanently disabled unskilled worker rehabilitation services is unfair and would only increase the possibility that he would never obtain the skills necessary to restore him to earnings comparable to his pre-injury earnings.

In the case before us, the jobs Wilson can supposedly get pay less than half of his pre-injury earnings. The record indicates that at the time of the administrative hearing, Wilson was enrolled in a respiratory-therapy program at a community college and earning better than a "B" average. The ALJ in his opinion complimented Wilson on his motivation and efforts to return to gainful employment. With a reasonable amount of retraining, it is possible that Wilson may be able to reenter the job market and become employed

at a pay rate comparable to what he earned before his injury. Wilson's efforts to gain the skills which will permit him to again compete in the job market are promoted by the statutory scheme under KRS 342.710. This not only benefits Wilson, but also is of benefit to society as a whole as the prosperity of this Commonwealth depends in a large measure upon the well-being of its workers. Further, to the employer's benefit, retraining may in the future provide a basis for reopening the claim.

■ A worker may be disqualified for rehabilitation by being too untrainable, as well as having retained certain vocational abilities, hence the requirement under KRS 342.710(3) that the goal of rehabilitation be "feasible, practical, and justifiable." To summarize, our holding is that an employee who has suffered a compensable disabling injury, barring a reasonable basis to deny rehabilitation (KRS 342.710(3)), is entitled to have the ability to perform suitable work restored through an appropriate rehabilitation plan.

The opinion of the Workers Compensation Board is reversed and the case is remanded for an award of vocational rehabilitation benefits pursuant to KRS 342.710.

All concur.