AK STEEL CORPORATION, Appellant

v.

Paul POLLITT; John B. Coleman, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2007–CA–001698–WC.

Court of Appeals of Kentucky.

July 18, 2008.

Elaina L. Holmes, Ashland, KY, for appellant.

William C.O. Reaves, Ashland, KY, for appellee.

Before NICKELL, THOMPSON, and VANMETER, Judges.

*OPINION*

THOMPSON, Judge.

AK Steel Corporation filed this petition for review from an order entered by the Workers' Compensation Board (Board) affirming an opinion and order of an Administrative Law Judge (ALJ). For the reasons stated, we affirm.

Paul Pollitt filed a workers' compensation claim against his former employer, AK Steel, alleging that he was affected by an occupational disease arising out of that employment. Pollitt produced evidence demonstrating that he was exposed to asbestos while working in various positions for AK Steel between 1978 and 1992. In part, Pollitt asserted that he worked in a bonder area cutting materials that contained asbestos during 1983 and 1984. Additional evidence indicated that Pollitt also may have been exposed to asbestos after he began working for another employer in 1994.

Pollitt first sought treatment in May 2004, when he developed a nagging cough. After being advised by his physician that he may have asbestos-related damage, in June 2004, Pollitt provided a notice letter

to AK Steel. Although Pollitt had not missed work due to lung problems, he was advised to obtain yearly x-rays to monitor the progress of his condition.

AK Steel produced evidence regarding asbestos abatement procedures during the time of Pollitt's employment. It disputed Pollitt's claim that asbestos products were used in the bonder section where he had worked, and it asserted that any exposure Pollitt may have had to asbestos during his employment was limited.

The majority of the medical evidence indicated that Pollitt did not have asbestosis. However, he had developed a calcified pleural plaque condition in his left hemi-diaphragm consistent with exposure to asbestos which most likely occurred at work. An occupational pulmonary specialist indicated that plaque generally forms fifteen to twenty years after the initial exposure to asbestos and that calcification possibly occurs within twenty years, but usually within twenty-five to thirty years after the initial exposure. It was recommended that Pollitt have yearly chest x-rays and spirometry studies to monitor any changes in his pulmonary symptomatology. Similar testimony and opinions were provided by a pulmonologist who opined that the plaque constituted a very minor change in the human organism and that Pollitt was not disabled.

After reviewing the evidence, the ALJ found that Pollitt's last injurious exposure "most likely" occurred in July 1986, while he was employed by AK Steel, and that the medical evidence demonstrated Pollitt suffered from a calcified pleural plaque condition rather than from newer or current exposure to asbestos. The ALJ concluded that Pollitt provided timely notice to AK Steel within one month of discovering that he may have an asbestos-related lung condition, and that the claim was timely filed within twenty years from the July 1986 exposure. Further, the ALJ found:

4. There are interesting issues in regards to existence of the disease and extent and duration of disability. [Pollitt] filed his claim form alleging asbestosis and damage from asbestos exposure. After reviewing the medical evidence, the [ALJ] notes that both Drs. Lockey and Kraman agree [Pollitt] does not have asbestosis. Instead, they agree [Pollitt] does have a calcified pleural plaque which is associated with [Pollitt's] exposure to asbestos. Based upon the testimony of both of these physicians, the [ALJ] is convinced [Pollitt] does not have asbestosis. However, he is also convinced [Pollitt] does have the calcified plaque condition noted by the physicians causally related to his occupational exposure which, as is noted above, most likely occurred between April 3, 1985 and July 29, 1986. The evidence indicates that while [Pollitt] may have had a slight breathing impairment caused by a non-occupational condition, his exposure to asbestos has not caused him any impairment or disability as of this time. Instead, the exposure has only caused the condition noted above which, while not causing any disability or impairment, does rise to the need of annual medical x-ray and pulmonary check-ups as is noted by Dr. Lockey. As [Pollitt] lacks an impairment or disability causally related to an occupational disease or injury, his claim for income benefits must be dismissed. However, KRS[1] 342.020 provides for medical benefits for the cure and relief from the effects of an injury or occupational disease. An occupational disease means a condition arising out of and in the course of employment. KRS 342.0011(1)(2). Further

1. Kentucky Revised Statutes.

Subparagraph (1) defines injury as any work related traumatic event or series of traumatic events, including cumulative trauma, arising out of or in the course of employment which is the proximate cause producing a harmful change to the human organism evidenced by objective medical findings.... Further, an occupational disease is included in the definition of injury. In this particular instance, [Pollitt] does have objective evidence of a harmful change to the human organism as Dr. Kraman indicated [Pollitt] had a slight harmful change in that the calcified pleural plaque was similar to a scar formation. Dr. Lockey agreed [Pollitt] should have yearly check-ups because of this condition. Therefore, while [Pollitt] is not entitled to income benefits, he shall be entitled to reasonable and necessary medical check-ups for the asbestos related exposure noted above under KRS 324.020.

The ALJ dismissed Pollitt's claim for income benefits, but determined that he was entitled to receive medical benefits for "reasonable and necessary medical treatment in the form of yearly x-rays and pulmonary studies pursuant to KRS 342.020 for his asbestos related calcified plaques[.]" The Board affirmed, finding that the pleural plaque condition fell within the general definition of an injury as provided in KRS 342.0011(1). AK Steel's petition for review followed.

■ Initially, we address Pollitt's challenge to the timeliness of AK Steel's petition for review. CR [2] 76.25(2) required AK Steel to file its petition for review within thirty days from the entry of the Board's order on July 20, 2007. Because the thirtieth day from July 20 fell on Sunday, August 19, the petition for review was due on Monday, August 20. CR 6.01. Since the petition was transmitted by Federal Express on August 20, the petition

was timely filed when it was received by this Court on Tuesday, August 21. CR 76.40.

■ The substantive issues on appeal turn on whether the ALJ erred by finding Pollitt eligible for medical benefits based on his calcified pleural plaque condition.

Our resolution of this issue must be premised on the rules of construction applicable to our Workers' Compensation Act. It is remedial in nature and requires liberal construction to affect its "humane and beneficent purposes." *Wilson v. SKW Alloys, Inc.* 893 S.W.2d 800, 802 (Ky.App. 1995). The history of the workers' compensation law in Kentucky demonstrates that the legislature has sought to broaden rather than restrict the coverage afforded by the Act. *Princess Mfg. Co. v. Jarrell,* 465 S.W.2d 45, 48 (Ky.1971). With the remedial purpose of the Act as the beginning point of our discussion, we turn to the merits of the arguments presented.

KRS 342.020(1) provides that the employer pay for the medical, surgical, and hospital treatment incurred for the cure and relief from the effects of an injury or occupational disease. AK Steele contends that pleural plaque is neither an effect of an injury nor occupational disease and, therefore, it is not responsible for the payment of medical benefits.

KRS 342.0011(2) defines an occupational disease as "a disease arising out of and in the course of the employment." Such a disease:

[S]hall be deemed to arise out of the employment if there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident to the

---

**2.** Kentucky Rules of Civil Procedure.

work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause.

KRS 342.0011(3).

Further, an occupational disease falls generally within the KRS 342.0011(1) definition of an injury, which includes:

[A]ny work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings.

Based on the language employed in the statutes, the ALJ stated that "[a]n occupational disease means a condition arising out of or in the course of employment." Finding that the calcified pleural plaque condition met the definition of an occupational disease, the ALJ awarded Pollitt medical benefits for the costs of monitoring and treating the condition. KRS 342.020(1).

AK Steele contends that this is not an occupational disease claim. AK Steele's focus on the semantics of whether Pollitt has an injury, a disease or a medical condition ignores the undeniable fact in this case: the ALJ as fact-finder has determined that Pollitt has a calcified plaque caused by his occupational exposure to asbestos.

In *Dealers Transport Company v. Thompson*, 593 S.W.2d 84 (Ky.App.1979), the Court explained that an occupational disease is a subcategory of the concept of injury. Occupational disease is a subcategory within the overall statutory concept of injury which is broadly defined as a work-related harmful change in the human organism. KRS 342.0011. An occupational disease is:

[A] subcategory within the overall statutory concept of injury which is broadly defined as a work-related harmful change in the human organism. An oc-

cupational disease is for coverage purposes a special category of injury. (citation omitted).

*Id.* at 88. In that case, the decedent allegedly contracted pneumonia as a result of his exposure to extreme weather conditions while working. It was concluded that there existed substantial medical evidence sufficient to support the Board's award of benefits where two doctors testified that the decedent's working condition lowered his resistance to pneumonia, or was sufficient to cause a mild fatal viral infection and the death compensable.

In the present context, the award of medical benefits for calcified pleural plaque affects the remedial and humanitarian purposes of the Workers' Compensation Act. *Wilson*, 893 S.W.2d at 802. In the context of a workers' compensation proceeding, the recognized benefits of medical monitoring of calcified pleural plaque condition includes: (1) allowing recovery fosters access to medical testing and facilitates early diagnosis and treatment; (2) prevention of future costs and reduction of the potential liability of the employer; and (3) it satisfies basic notions of fairness by assuring that the exposed employee recover the costs of medical treatment. *Wood v. Wyeth–Ayerst Laboratories*, 82 S.W.3d 849, 857 (Ky.2002), citing James A. Henderson, Jr., and Aaron D. Twerski, *Asbestos Litigation Gone Mad: Exposure–Based Recovery for Increased Risk, Mental Distress and Medical Monitoring*, 53 S.C. L.Rev. 815 (2002).

Based on the objective of affording a remedy to injured workers and the corresponding reasoning set forth in *Dealers Transport*, we reject AK Steel's contention that because Pollitt has not yet developed asbestosis, he must be denied medical benefits. Calcified pleural plaque is a precursor to a well-known occupational disease, asbestosis. We conclude that the ALJ

properly awarded medical benefits for the medical monitoring of his condition as a part of the treatment of an occupational disease.

AK Steele argues that because the ALJ dismissed the claim for income benefits as a result of an occupational disease, any claim for medical benefits should likewise have been dismissed. Because there was substantial evidence that as a result of his employment Pollitt suffered a harmful change in the human organism, the ALJ was not required to dismiss the claim in its entirety. Although the ALJ found that Pollitt had not suffered a disability or impairment as a result of his condition, an award of medical benefits was not precluded. *FEI Installation, Inc. v. Williams*, 214 S.W.3d 313 (Ky.2007).

We agree with the Board that Pollitt's claim was not barred by the applicable statute of limitations. There was substantial evidence in the record that Pollitt's last injurious exposure was on July 29, 1986, and that his application for benefits was filed on September 7, 2004, within twenty years of his last injurious exposure. KRS 342.316(4)(a).

Because we conclude that the ALJ properly characterized Pollitt's claim for medical benefits as one arising from his exposure to an occupational disease, there is no merit to AK Steel's contention that Pollitt failed to file a proper Form 101 asserting a work-related injury. He filed a Form 102 application alleging asbestosis and damage from asbestos exposure.

In summary, we emphasize that our opinion should not be interpreted to permit benefits based purely on speculation that in the future the claimant may incur medical expenses. Such a determination must be deferred until such time when certainty replaces speculation. However, Pollitt's pleural plaque condition is an existing diagnosed medical condition that arose out of and in the course of his employment. The ALJ and the Board were within their discretion when both found that Pollitt has suffered a harmful change to the human organism because of his work-related exposure to asbestos and that the cost of his yearly medical examinations should be paid by his employer.

The decision of the Workers' Compensation Board is affirmed.

NICKELL, Judge, Concurs.

VANMETER, Judge, dissents and files separate opinion.

VANMETER, Judge, Dissenting:

I Respectfully Dissent. The substantive issues on appeal turn on whether the ALJ erred by finding Pollitt eligible for medical benefits based on his calcified pleural plaque condition. Although a compelling argument exists that Pollitt should be eligible to receive medical benefits for the monitoring of such a condition, on the ground that the condition is causally related to his occupational exposure to asbestos while employed by AK Steel, I believe the ALJ erred by reaching such a conclusion.

KRS 342.0011(2) defines an occupational disease as "a disease arising out of and in the course of the employment." Such a disease

> shall be deemed to arise out of the employment if there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident to the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause.

KRS 342.0011(3). Further, an occupational disease falls generally within the KRS

342.0011(1) definition of an injury, which includes

> any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings.

Here, the ALJ stated that "[a]n occupational disease means a **condition** arising out of or in the course of employment." (Emphasis added.) Finding that the calcified pleural plaque condition met this definition of an occupational disease, the ALJ awarded Pollitt medical benefits for the costs of monitoring and treating the condition. KRS 342.020(1).

However, the medical evidence indicates that a calcified pleural plaque condition is neither a disease nor an indicator that asbestosis will develop in the future. Instead, a pleural plaque calcification is simply a benign marker of prior exposure to asbestos. *See, e.g., Solberg v. Tice Elec.*, 212 Or.App. 430, 157 P.3d 1277 (2007) (benign, asymptomatic pleural plaques do not constitute an occupational disease); *Volterano v. Workmen's Comp.App. Bd.*, 536 Pa. 335, 639 A.2d 453, 457 (1994) ("pleural thickening is not an occupational disease" or a physical injury). Moreover, nothing in either the statutes or the case law supports the ALJ's statement that the definition of an occupational disease includes not only a disease, but also a condition "arising out of and in the course of employment." KRS 342.0011(2). Although an employer may be directed to provide compensation "as may be required for the cure and treatment of an [employee's] occupational disease[,]" KRS 342.020(1), similar provisions do not exist in regard to the medical monitoring of a non-disease condition such as an asymptomatic calcified pleural plaque condition, even if caused by occupational exposure to asbestos. In the ab-

sence of legislation directing employers to pay such costs, I would conclude that the ALJ erred by finding AK Steel liable for providing such medical benefits.

In addition, any argument that Pollitt should be awarded medical benefits relating to a work-related injury should fail since Pollitt's claim was not filed within two years of his last AK Steel exposure to asbestos, KRS 342.185(1), and the expanded limitations period applicable to asbestos-related diseases does not apply to work-related injuries. KRS 342.316(4)(a).

I would vacate the Board's order and remand for entry of a new order reversing and remanding this matter to the ALJ for the dismissal of Pollitt's claim.