RENDERED:  NOVEMBER 8, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0444-WC

NORTON HEALTHCARE                                                APPELLANT


PETITION FOR REVIEW OF A DECISION
v.                      OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-22-01161


GINA M. MURPHY; HONORABLE JOHN H.
MCCRACKEN, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                              APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ECKERLE, GOODWINE, AND McNEILL, JUDGES.

ECKERLE, JUDGE:  This appeal comes to us from an injury claim put forth by

Appellee, Gina M. Murphy ("Murphy"), who claims that she caught COVID-19

from her employment at a hospital as a nurse.  After a hearing, an Administrative

Law Judge ("ALJ"), dismissed the case, finding Murphy did not carry her burden

of proving the injury occurred at work. Murphy appealed to the Workers' Compensation Board ("Board"), which reversed the ALJ, finding that the injury qualified as an "occupational disease," which carried a lesser burden of proof that Murphy had met. Appellant, Norton Healthcare ("Norton"), petitions this Court for review. Even applying the standard of proof applied by the Board, we conclude that there was substantial evidence to support the ALJ's finding that Murphy failed to meet her burden that she contracted COVID-19 while working for Norton. Hence, we reverse the Board and remand with instructions to reinstate the ALJ's determination.

Murphy is a registered nurse who worked at Norton's Brownsboro Hospital in the pre-surgery, block room. As such, she provided oxygen to patients through bagging or nasal cannula. Bagging required Murphy frequently to be within inches of the patient. Her duties included repositioning patients in their beds for upcoming procedures. During the course of her employment, she regularly had contact with patients and their families. Family members were not necessarily tested for COVID-19 and may or may not have been masked. Murphy later testified that she always wore a surgical mask, but it was not an N95 mask. She contracted COVID-19, experienced significant problems, and filed a legal action.

During her testimony before the ALJ, Murphy testified that she began to experience symptoms consistent with COVID-19 on November 18, 2020. She stayed home from work the following day and was tested. She received a positive test result the next day, on November 20. She then did not work for three weeks.

Murphy testified that, prior to November 18, 2020, an anesthesiologist informed her that she was twice exposed to patients who tested positive for COVID-19. She also averred that several other physicians in her department had stated that they had been exposed to COVID-19 around the same time period. However, Murphy conceded that she had traveled to Florida by commercial airplane from November 6, to November 12, 2020, where she had gone shopping and to restaurants. Murphy also acknowledged that she had visited local stores and restaurants in Kentucky after returning from Florida. Murphy was unable to provide the exact date of her exposure. She also could not identify the source as being a patient or family member from whom she contracted it.

Murphy filed her application for benefits as a Form 101 work-related injury, which is different than the form used for a disease. Murphy alleges that she continues to experience symptoms consistent with long-haul COVID-19, including ongoing fatigue, headaches, hair loss, and difficulty concentrating.

The primary issue before the ALJ concerned whether Murphy suffered an injury that was work-related. In addition to her own testimony and

medical records, Murphy presented the deposition and report of Dr Jules Barefoot. Dr. Barefoot diagnosed Murphy with a history of workplace exposure to COVID-19 resulting in persistent cognitive dysfunction and fatigability. He opined that Murphy's injury occurred on November 19, 2020, during the course and scope of her employment with Norton.

Dr. Barefoot conceded that he received the history on which he based his opinion from Murphy alone. He had no other information about the circumstances concerning her exposure to COVID-19. Dr. Barefoot also testified that he had no specific expertise on the transmissibility of COVID-19 or other communicable diseases. Based on her work-related exposure, Dr. Barefoot assessed Murphy with a 23% whole-person impairment rating according to the 5th Edition of the American Medical Association, *Guides to the Evaluation of Permanent Impairment* ("*AMA Guides*").

Dr. Timothy Allen performed an Independent Medical Evaluation of Murphy at Norton's request. Following the examination, he concluded that Murphy contracted COVID-19 in November 2020. He stated that Murphy was likely exposed to COVID-19 at Norton, but he could not eliminate other sources. Dr. Allen assessed a 5% impairment rating under the *AMA Guides*, which he attributed half to Murphy's COVID-19 contraction and half to her pre-existing conditions.

Dr. Bruce Broudy also conducted an examination of Murphy at Norton's request. Dr. Broudy concluded that Murphy has no pulmonary impairment from COVID-19 or any other source. Also at Norton's request, Dr. Mark Dougherty prepared a report. Dr. Dougherty is certified in Internal Medicine with a subspecialty in Infectious Disease. He did not express an opinion concerning Murphy's exposure or impairment, but he addressed the contagious nature of COVID-19. Dr. Dougherty stated that COVID-19 is a communicable disease spread through both airborne and droplet particles as well as from substances on surfaces. He stated the incubation periods for COVID-19 vary from two to 14 days, and most individuals develop symptoms within two to 10 days. Dr. Dougherty stated that wearing an N95 mask and other personal protective equipment can significantly reduce the risk of contracting COVID-19.

After examining the evidence, the ALJ found that Murphy failed to meet her burden of proving that she was exposed to COVID-19 during her work at Norton. Consequently, the ALJ dismissed Murphy's claim. Thereafter, the ALJ denied Murphy's petition for reconsideration.

On appeal, the Board vacated and remanded, concluding that the ALJ applied an incorrect standard of proof. More specifically, the Board held as follows:

> The ALJ failed to appreciate or discuss that an
> occupational disease claim has different proof

requirements. The disease shall be deemed to arise out of employment if certain tests are met. The burden placed upon Murphy is beyond that required in the occupational disease context, as the issue is whether the employment setting *could* cause the disease, not whether it *did* cause the disease. *See* [*Miller v. Tema Isenmann Inc.*, 542 S.W.3d 265, 272 (Ky. 2018)]. The ALJ placed particular emphasis on Murphy's failure to produce proof of the alleged persons at the hospital from whom she may have contracted COVID-19, the stage of their diseases, and whether they were contagious. This is a burden that is virtually impossible to meet as COVID-19 is transmitted through the air, through droplets, and from surfaces. The occupational disease statute provides for a "consideration of all the circumstances" when determining the causal connection between the work environment and the occupational disease. KRS[1] 342.0011(3). The occupational disease shall be incidental to the character of the business. *Id.* These are findings for the ALJ as the fact finder to make, and we remand for the ALJ to elucidate the evidence found to support or negate a finding of compensability based on statutory law. The ALJ did not cite to either KRS 342.0011(1) or (3) in his Opinion or Order on Petition for Reconsideration. This failure to make the required findings of fact and conclusions of law preclude a meaningful appellate review. *See Kentland Elkhorn Coal Corp. v. Yates*, 743 S.W.2d 47 (Ky. App. 1988); *Shields v. Pittsburgh and Midway Coal Mining Co.*, 634 S.W.2d 440 (Ky. App. 1982).

Board Opinion, March 15, 2024, pp. 19-20 (emphasis in original).

Accordingly, the Board vacated the ALJ's order dismissing Murphy's claim and remanded for a different application of the law to the facts. Norton now

---

[1] Kentucky Revised Statutes.

petitions for review to this Court.  Additional facts will be set forth below as necessary.

It is well-established that a claimant in a workers' compensation claim bears the burden of proving each essential element of her claim.  *Burton v. Foster Wheeler Corp.*, 72 S.W.3d 925, 928 (Ky. 2002).  Where the party that bears the burden of proof is unsuccessful before the ALJ, the question on appeal is whether the evidence is so overwhelming upon consideration of the record as a whole as to compel a finding in claimant's favor.  *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984).  In order to reverse the decision of the ALJ, the claimant must show that there was no substantial evidence of probative value to support his decision.  *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986).  As the fact-finder, the ALJ has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence.  *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985).  Where the evidence is conflicting, the ALJ has the sole authority to believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof.  *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).  The function of this Court's review is to correct the Board only where the Court perceives that the Board has overlooked or misconstrued controlling statutes or

precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

As an initial matter, Murphy contends that this action is not ripe for adjudication because the Board vacated the dismissal and remanded for additional findings. However, the finality requirements of Kentucky Rule of Civil Procedure ("CR") 54.02 do not apply to Board orders. *Davis v. Island Creek Coal Co.*, 969 S.W.2d 712, 713 (Ky. 1998). For purposes of determining finality, the controlling question is whether Norton would be precluded from raising this issue again following remand to the ALJ. *Whittaker v. Morgan*, 52 S.W.3d 567, 569-70 (Ky. 2001). Because the Board remanded this matter to the ALJ for reconsideration under a specific standard of proof, which precluded the one the ALJ used, we conclude that the Board's decision was ripe for review.

On appeal, Norton first argues that the Board improperly converted Murphy's injury claim into a claim for an occupational disease. Unlike a work-related injury, a claim for an occupational disease is initiated by the filing of a "Form 102," "Application for Resolution of an Occupational Disease Claim." The employer liable for compensation for an occupational disease is the employer in whose employment the employee was last exposed to the hazard. KRS 342.316(1). KRS 342.020 further provides that the employer is required to pay for the "cure

and relief" of any occupational disease from which the worker suffers regardless of whether income benefits are awarded.

Norton contends that the Board improperly treated Murphy's application as an occupational disease claim rather than the Form 101 injury claim that she filed. Norton also argues that the Board improperly directed the ALJ to apply the standard of proof for causation in occupational disease cases. And finally, Norton also asserts that a communicable disease can never constitute an occupational disease under KRS 342.0011(2) and (3).

But as the Board noted, KRS 342.0011(1) excludes from the definition of "injury" "any communicable disease *unless the risk of contracting the disease is increased by the nature of the employment.*" (Emphasis added.) A communicable disease can be an injury within the meaning of the Act, "[b]ut, it does not follow that a communicable disease must always meet the occupational disease criteria in order to be covered." *Dealers Transport Co. v. Thompson*, 593 S.W.2d 84, 88 (Ky. App. 1979). Thus, a communicable disease such as COVID-19 is compensable as an injury when the claimant establishes that the risk of contracting the disease is increased by the nature of the employment. Therefore, the ALJ and the Board properly considered Murphy's petition as an injury claim.

Having said this, an occupational disease is a subcategory of the concept of injury. *Id.* KRS 342.0011(2) defines "occupational disease" as "a

disease arising out of and in the course of the employment[.]" KRS 342.0011(3)

further provides:

> An occupational disease as defined in this chapter shall
> be deemed to arise out of the employment if there is
> apparent to the rational mind, upon consideration of all
> the circumstances, a causal connection between the
> conditions under which the work is performed and the
> occupational disease, and which can be seen to have
> followed as a natural incident to the work as a result of
> the exposure occasioned by the nature of the employment
> and which can be fairly traced to the employment as the
> proximate cause. The occupational disease shall be
> incidental to the character of the business and not
> independent of the relationship of employer and
> employee. An occupational disease need not have been
> foreseen or expected but, after its contraction, it must
> appear to be related to a risk connected with the
> employment and to have flowed from that source as a
> rational consequence[.]

The Board acknowledged the lack of clear case law as to whether a

claimant must establish with certainty the source of the communicable disease in

an injury claim. Nevertheless, the Board adopted the standard for occupational

disease claims to set forth the standard of proof necessary to establish causation.

In support of this approach, the Board cited *Miller v. Tema Isenmann

Inc.*, *supra*. In that case, the claimant alleged that he contracted bladder cancer as a

result of exposure to carcinogenic chemicals through his employment. The matter

was pursued as an occupational disease claim as defined by KRS 342.0011(2) and

(3). The Kentucky Supreme Court held that the ALJ relied on objective evidence

-10-

showing that the claimant had been exposed to carcinogenic chemicals. 542 S.W.3d at 271-72. In addition, the claimant's physician testified that there was a greater than 50-percent chance that long-term exposure to the chemical could cause bladder cancer. *Id.* at 272. The Supreme Court held this causal connection sufficed because it showed that the exposure could cause the disease, not that it did cause the disease. *Id.* at 271. After reviewing the evidence, the Supreme Court held that there was substantial evidence supporting the ALJ's finding that the exposure could have caused claimant's bladder cancer. *Id*. at 272.

Similarly, in *Dealers Transport Company v. Thompson*, *supra*, the decedent allegedly contracted pneumonia as a result of his exposure to extreme weather conditions while working. This Court concluded that there was substantial medical evidence sufficient to support the Board's award of benefits where two doctors testified that the decedent's working condition lowered his resistance to pneumonia, thereby rendering the decedent's death compensable. *Id*. at 88-89.

And in *AK Steel Corporation v. Pollitt*, 259 S.W.3d 505, 508 (Ky. App. 2008), the claimant alleged that he developed a calcified pleural plaque condition as a result of his work-related exposure to asbestos. *Id.* at 506. Based on the medical evidence that his last injurious exposure "most likely" occurred while he was employed by AK Steel, the ALJ held that employer liable for payment of

medical benefits. *Id.* at 507. This Court found that evidence sufficient to support the award. *Id.* at 509.

All of these cases involve occupational disease claims, which are initiated by the filing of a Form 102 rather than a Form 101. Thus, we are not convinced that this approach is necessarily applicable to circumstances such as this where the claimant brings an injury claim based upon exposure to a communicable disease. Doing so would conflate the distinct procedural and factual issues arising from the two types of claims.

Nevertheless, in each of the cases discussed above, the claimant presented clear evidence of a work-related exposure followed by the development of an occupational disease. In this case, the ALJ focused on the lack of proof that exposure to any particular patient caused Murphy to contract the disease. Murphy provided neither the names of the two people who allegedly exposed her to COVID-19 nor the date on which she was exposed. The ALJ also observed that the anesthesiologist who told her of the potential exposure from these patients did not state when the exposure occurred. The ALJ also noted the undisputed evidence of her potential exposure from many other likely sources within the incubation period. Given the conflicting proof as to causation, the ALJ found that Murphy failed to meet her burden of proof on this issue.

We conclude that the ALJ applied the correct standard of proof to the initial question of whether Murphy was actually exposed to COVID-19 during the course and scope of her employment. As noted above, a communicable disease is not compensable as an "injury" "unless the risk of contracting the disease is increased by the nature of the employment." KRS 342.0011(1). Murphy's employment as a registered nurse in a hospital may reasonably be considered to have increased the risk of contracting this or any other disease. But her choice to travel via a commercial airplane and visit populated airports, tourist locations, and activities during the height of a pandemic cannot be ignored.

Murphy points out that she was prevented from knowing or releasing the names of specific patients due to healthcare privacy laws and Norton's own policies. The point, however, is that Murphy had the burden of proving that she was exposed to COVID-19 during the course of her employment. While there was some evidence of potential exposure, Murphy did not present any clear evidence of actual exposure while working at Norton. In addition, there was also substantial evidence that Murphy likely was exposed to other potential sources of COVID-19 during the incubation period. As the ALJ concluded, "[g]iven the widespread nature of the virus in November 2020, its contagious nature, and the fact that someone who is asymptomatic with the virus could have given it to her or anyone else near them leads the ALJ to believe that Murphy has not proven that she

contracted COVID-19 while working for Norton's."  It has not escaped us that a different result would lead to anyone in the healthcare field receiving workers' compensation any time they were injured by contracting COVID-19, the flu, the common cold, or other virus while employed.  The awarding of benefits has never been that universal and would represent a gross change in the law.

We find that the ALJ applied the proper standard of proof to the controlling aspect of Murphy's claim, and that his conclusion was supported by substantial evidence.  At the very least, we cannot say that the evidence compelled a different result.  Consequently, the Board erred by vacating the ALJ's dismissal of Murphy's claim.

Accordingly, we reverse the Board's March 15, 2024, Opinion and Order and remand with directions to reinstate the ALJ's August 24, 2023, Opinion and Order dismissing Murphy's claim.

ALL CONCUR.


BRIEF FOR APPELLANT:

Robert F. Ferreri
Matthew Zanetti
Louisville, Kentucky

BRIEF FOR APPELLEE GINA MURPHY:

David L. Murphy
Louisville, Kentucky